John RATTI, Jr. and Glenda
Ratti, his wife,

v.

WHEELING PITTSBURGH STEEL
CORPORATION

v.

P.J. Dick Contracting Inc. and Mendel
Steel and Ornamental Iron Company
and Kaiser Engineers, Inc., ICF Kaiser Engineers, Inc. and ICF Engineers
Inc.

Appeal of Mendel Steel
and Ornamental Iron
Company (At 834).

John Ratti, Jr. and Glenda
Ratti, his wife,

v.

Wheeling Pittsburgh Steel Corporation

v.

P.J. Dick Contracting, Inc. and Mendel
Steel and Ornamental Iron Company
and Kaiser Engineers, Inc., ICF Kaiser Engineers, Inc. and ICF Engineers, Inc.

Appeal of P.J. Dick Contracting,
Inc. (At 887).

John Ratti, Jr. and Glenda Ratti,
his wife, Appellees

v.

Wheeling Pittsburgh Steel Corporation

v.

P.J. Dick Contracting Inc., and Mendel
Steel and Ornamental Iron Company
and Kaiser Engineers, Inc., ICF Kaiser Engineers, Inc. and ICF Engineers
Inc.,

Appeal of Wheeling Pittsburgh Steel
Corporation (At 956).

Superior Court of Pennsylvania.

Argued March 29, 2000,
Filed Aug. 18, 2000.

Daniel P. McDyer, Pittsburgh, for Mendel Steel and Ornamental Iron

Dennis S. Mulvihill, Pittsburgh, for P.J. Dick Contracting.

M. Richard Dunlap, Pittsburgh, for Wheeling Pittsburgh Steel.

Before DEL SOLE, ORIE MELVIN and BECK, JJ.

ORIE MELVIN, J.:

¶ 1 The present appeals stem from a bifurcated trial wherein a jury allocated negligence among the defendants in the underlying personal injury action and the trial court subsequently determined the parties' respective rights to indemnity. Given the identical factual background and in order to obtain a complete picture of the case, resolution of these three appeals can best be accomplished in a single opinion.

¶ 2 The underlying action arose out of the injuries sustained by John Ratti, Jr. when a saturator vessel exploded at the Wheeling–Pittsburgh Steel Corporation (Wheeling–Pitt) plant located in Follansbee, West Virginia. At the time of the explosion, Mendel Steel and Ornamental Iron Company (Mendel Steel) employed Mr. Ratti as a welder. Mendel Steel was a subcontractor hired by the general contractor, P.J. Dick Contracting, Inc. (P.J. Dick), to work on an extensive repair project at the Wheeling–Pitt plant. Mr. Ratti and his wife instituted this civil action against Wheeling–Pitt, which in turn filed a complaint to join P.J. Dick, Mendel Steel and ICF Kaiser Engineers, Inc. (Kaiser). The complaint to join alleged each Additional Defendant negligently, recklessly, and carelessly caused the injuries sustained by Mr. Ratti and further sought contractual indemnification for any amount recovered by Mr. Ratti from Wheeling–Pitt. Additionally, P.J. Dick cross-claimed for indemnification against Mendel Steel. Wheeling–Pitt next motioned to amend its complaint to join in order to assert a claim for recovery of over one-half million dollars in retroactively increased insurance premiums for the property damage caused by the explosion. This motion and subsequent reconsideration motion were each denied prior to trial.

¶ 3 On December 17, 1993, Wheeling–Pitt settled the Rattis' claim for $1,150,000.00. The Additional Defendants refused to participate in the settlement; therefore, Wheeling–Pitt continued to pursue its claim seeking indemnification against Kaiser, P.J. Dick, and Mendel Steel for the amount of the settlement. The trial was bifurcated pursuant to a Stipulation and Order of Court dated January 27, 1997. The first phase was held before a jury to determine the percentage of negligence, if any, allocable among the remaining Additional Defendants. The jury returned a verdict finding that Wheeling–Pitt was 99% grossly negligent, and P.J. Dick was assigned 1% ordinary negli-

gence. Mendel Steel and Kaiser were found to be without fault.

¶ 4 The second phase of the trial was stipulated to proceed non-jury wherein the trial court was asked to resolve the indemnity claims of Wheeling–Pitt against P.J. Dick as well as P.J. Dick's indemnity claim against Mendel Steel. On April 22, 1997, the trial court issued a Memorandum Opinion and Order of Court finding P.J. Dick was required to indemnify Wheeling–Pitt in the amount of $1,150,000.00 pursuant to the indemnification clause contained in the Wheeling–Pitt/P.J. Dick contract. The court further held Mendel Steel was not liable for indemnification to either Wheeling–Pitt or P.J. Dick.

¶ 5 P.J. Dick filed a motion for post-trial relief requesting either judgment notwithstanding the verdict (JNOV) or alternatively, a new trial with respect to the jury verdict in Phase I of the trial. Further, P.J. Dick filed various exceptions to the court's rulings on the indemnity claims in Phase II of the trial. Wheeling–Pitt filed a motion for post trial relief seeking JNOV, or in the alternative, a new trial on the issue of gross negligence. Wheeling–Pitt also sought reconsideration of the court's denial of its motion to amend its complaint to join seeking to increase the damage award based on a retroactive increase in its insurance premium occasioned by the property loss sustained in the explosion. Additionally, Wheeling–Pitt asked the court to mold the verdict to include prejudgment interest from the date of settlement. Despite having received a favorable verdict in both phases of the trial, Mendel Steel also filed a motion for post-trial relief. By Order of Court dated April 21, 1999, all post-trial motions were denied. Thereafter, on May 19, 1999, Judgment was entered. The instant appeal filed by P.J. Dick and the cross-appeals of Wheeling–Pitt and Mendel Steel followed.

### CROSS–APPEAL OF MENDEL STEEL (834 WDA 1999)

¶ 6 Mendel Steel has presented the following three issues:

1. WHETHER THE TERMS OF AN ALLEGED SUBCONTRACT THAT FAILED TO EXPRESSLY WAIVE TORT IMMUNITY IS UNENFORCEABLE ON ITS FACE AGAINST THE EMPLOYER OF AN EMPLOYEE INJURED BY A THIRD PERSON'S NEGLIGENCE?

2. WHETHER THE LAW OF PENNSYLVANIA SHOULD APPLY TO AN ALLEGED SUBCONTRACT WHICH PURPORTS TO HAVE BEEN NEGOTIATED AND ENTERED INTO IN PENNSYLVANIA AND WHERE THE PARTIES TO THE PURPORTED SUBCONTRACT HAVE PRINCIPAL OFFICES LOCATED IN PENNSYLVANIA, BUT THE ACCIDENT AND WORK OCCURRED IN WEST VIRGINIA?

3. WHETHER WHEN ENGAGED IN ABNORMALLY DANGEROUS ACTIVITY, ATTEMPTS TO EXCULPATE BY INDEMNIFICATION PROVISIONS SHOULD BE FOUND AGAINST PUBLIC POLICY?

Mendel Steel's brief at 3.

■■■ ¶ 7 Preliminarily, we must examine whether Mendel Steel's cross-appeal is properly before us. 42 Pa.R.A.P., Rule 501, provides:

> Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate of trust is so aggrieved, may appeal therefrom.

Pa.R.A.P. 501. A party is "aggrieved" when the party has been adversely affected by the decision from which the appeal is taken. *Green v. SEPTA*, 380 Pa.Super. 268, 551 A.2d 578, 579 (1988); *Clairton Corp. v. Chicago Title Ins.*, 438 Pa.Super. 488, 652 A.2d 916, 921 (1995). A prevailing party is not "aggrieved" and therefore, does not have standing to appeal an order that has been entered in his or her favor. *Id. See also, Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 191, 346 A.2d 269, 280 (1975); *Clairton Corp.*,

652 A.2d at 921; *Green v. SEPTA*, 551 A.2d at 579.

■■■ ¶ 8 The record reflects the judgment appealed from was entered in favor of Mendel Steel. The trial court found Mendel Steel was not liable for indemnity to either Wheeling–Pitt or P.J. Dick. Since Appellant was a prevailing party in the court below, it is not "aggrieved" within the meaning of the rule. It may not, therefore, bring this appeal. Accordingly, we quash Mendel Steel's cross-appeal.

### APPEAL OF P.J. DICK (No. 887 WDA 1999)

¶ 9 P.J. Dick presents the following six issues:

1. WHETHER P.J. DICK IS REQUIRED TO INDEMNIFY WHEELING–PITTSBURGH STEEL CORPORATION ('WHEELING–PITTSBURGH') FOR WHEELING–PITTSBURGH'S **GROSS** NEGLIGENCE?

2. WHETHER THE LOWER COURT ERRED IN DENYING P.J. DICK'S PROPOSED POINTS FOR CHARGE 3 AND 4, RELATING TO DEFINITIONS OF THE TERMS 'RECKLESSNESS' AND 'WANTON MISCONDUCT'?

3. WHETHER P.J. DICK'S DUTY TO INDEMNIFY, IF ANY, WAS PASSED THROUGH TO MENDEL STEEL AND ORNAMENTAL IRON COMPANY ('MENDEL STEEL') BY VIRTUE OF THE PROVISIONS OF THE SUBCONTRACT BETWEEN P.J. DICK AND MENDEL STEEL AND BY VIRTUE OF THE FEBRUARY 28, 1996 OPINION AND ORDER OF JUDGE WETTICK?

4. WHETHER P.J. DICK IS REQUIRED TO INDEMNIFY WHEELING–PITTSBURGH WHERE WHEELING–PITTSBURGH'S GROSS NEGLIGENCE AND THE EXPLOSION WHICH

CAUSED THE INJURIES DID NOT ARISE OUT OF P.J. DICK'S WORK?

5. WHETHER P.J. DICK IS ENTITLED TO JUDGMENT N.O.V. IN FAVOR BECAUSE: (a) THERE WAS NO EVIDENCE PRESENTED AT TRIAL WHICH WOULD IMPOSE ANY DUTIES ON P.J. DICK WITH RESPECT TO THE STEAM PURGE; (b) THERE WAS NO EVIDENCE AT TRIAL TO SUPPORT ANY THEORY OF NEGLIGENCE OR LIABILITY AGAINST P.J. DICK; AND, (c) THERE WAS NO EVIDENCE AT TRIAL THAT ANY ALLEGED NEGLIGENT CONDUCT BY P.J. DICK WAS A SUBSTANTIAL FACTOR IN CAUSING THE EXPLOSION?

6. WHETHER P.J. DICK IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY'S FINDINGS THAT P.J. DICK WAS ONE PERCENT (1%) NEGLIGENT AND THAT P.J. DICK'S CONDUCT WAS A SUBSTANTIAL FACTOR IN CAUSING THE EXPLOSION, WERE AGAINST THE WEIGHT OF THE EVIDENCE?

P.J. Dick's Brief at 5–6.

¶ 10 The contract between P.J. Dick and Wheeling–Pitt containing the disputed indemnification provision is in the form of a standard Wheeling–Pitt purchase order dated March 19, 1991. The relevant portion at paragraph 12 provides:

Seller [P.J. Dick] hereby assumes the entire and full responsibility and liability for any penalties and for any and all claims, damages, injury, loss and expense of any kind or nature whatsoever to all persons or entities (including, but not limited to, the employees of [Wheeling–Pitt], of [P.J. Dick] and/or any subcontractor) and to all property, arising out of or in any manner resulting from the execution of the work provided for in this contract and work incidental there-

to, or occurring in connection therewith, whether the same arises from the condition of the premises or the equipment or from negligence or whether under statute, regulation or rule or otherwise, and even though such damages, injury, loss or expense are attributable to the joint, concurrent or contributory negligence of [Wheeling–Pitt], its agents, servants, or employees. To the full extent allowed by law, [P.J. Dick], shall and does hereby indemnify, save harmless and defend [Wheeling–Pitt], its agents, servants and employees from and against any and all penalties, losses, liabilities, claims, or demands, whatsoever (including, without limitation, costs and expenses in connection therewith) arising out of any personal injury, including death, resulting therefrom, or out of any damage to or loss or destruction of property, based upon, occasioned by, attributable or related to, or in any manner resulting from the equipment, goods, or materials, or use thereof, or during, execution of the work provided for hereunder, whether the same arises under the common law, statute, regulation or rule or otherwise, and whether any such penalty, loss, liability, claim or demand is asserted by or on behalf of an employee of [Wheeling–Pitt], of [P.J. Dick], or any other person or entity, except where such penalties, losses, liabilities, claims, or demands result from the sole negligence of [Wheeling–Pitt].

Certified Record, Exhibit C attached to Complaint to Join P.J. Dick, at 15.

¶ 11 P.J. Dick first asserts the trial court erred as a matter of law in ruling the indemnity agreement extended coverage for loss occasioned by Wheeling–Pitt's grossly negligent conduct. In denying P.J. Dick's arguments to the contrary, the trial court, applying West Virginia law, found in summary fashion that "although the indemnification agreement language may be viewed … as broad, P.J. Dick, nonetheless 'assumed the entire and full responsibility for liability for any penalties

and for any and all claims, damages, injury, loss or expense of any kind or nature whatsoever to all persons and entities. . . .'" Trial Court Opinion, 7/14/99, at 7. Preliminarily, we note P.J. Dick also asserts error in the trial court's application of West Virginia law and argues that, if in fact a conflict of laws question exists, Pennsylvania law should be applied. Moreover, since both West Virginia and Pennsylvania law require unequivocal terms in circumstances where the indemnitee seeks to indemnify itself for the consequences of its own negligence, the instant indemnity provision is unenforceable because it specifically mentions only negligence and not gross negligence. Therefore, P.J. Dick argues this lack of specificity is fatal to Wheeling–Pitt's claim in a case where, as here, the indemnitee commits gross negligence.

■ ¶ 12 Before addressing the choice of law question we note our scope of review is plenary as the matter before us involves the interpretation of a contract, which is a question of law. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997). Thus, we are free to draw our own inferences and reach our own conclusions. *Id.* "If a trial court erred in its application of the law, [we] will correct the error." *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 876–77 (Pa.Super.1997). In Pennsylvania, choice of law analysis first entails a determination of whether the laws of the competing states actually differ. If not, no further analysis is necessary. If we determine a conflict is present, we must then analyze the governmental interests underlying the issue and determine which state has the greater interest in the application of its law. *Rosen v. Tesoro Petroleum Corp.*, 399 Pa.Super. 226, 582 A.2d 27 (1990), *appeal denied,* 527 Pa. 636, 592 A.2d 1303 (1991) (citing *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970)). Our examination of the laws of Pennsylvania and West Virginia lead us to the conclusion that a conflict does not exist.

■ ¶ 13 First and foremost, there can be no conflict where the question presented by this appeal is a matter of first impression in both jurisdictions. Moreover, both Pennsylvania and West Virginia recognize the same well-settled rules generally governing the requisites and validity of contracts also apply to the interpretation of contracts of indemnity. Specifically, each holds the language of such a contract will not be construed to indemnify a person against his own negligence, unless such contention is expressed in unequivocal terms. The West Virginia Supreme Court of Appeals stated in *Sellers v. Owens–Illinois Glass Co.*, 156 W.Va. 87, 191 S.E.2d 166 (1972), that "[g]enerally, contracts will not be construed to indemnify one against his own negligence, unless such intention is expressed in clear and definite language." Likewise, our Supreme Court in *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991), relying on its prior holding in *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907), held that an indemnity agreement using broad, all-inclusive words could not establish the parties' intent to cover losses due to the indemnitee's own negligence; the parties must express this intent in "clear and unequivocal language" for the agreement to be enforceable. *Ruzzi*, 588 A.2d at 4–5. In both jurisdictions the well-settled rule further states the primary purpose in construing indemnity contracts like other contracts is to ascertain and give effect to the intention of the parties. *Sellers* and *Ruzzi/Perry, supra.* Additionally, the law in both this Commonwealth and West Virginia acknowledges that indemnity clauses are construed most strictly against the party who drafts them especially when that party is the indemnitee. *Brotherton Constr. Co. v. Patterson–Emerson–Comstock, Inc.*, 406 Pa. 400, 178 A.2d 696 (1962); *Payne v. Weston*, 195 W.Va. 502, 509, 466 S.E.2d 161, 168 (1995). Accordingly, having found no conflict between how West Virginia and Pennsylvania rules govern the construction of indemnity contracts, we apply the above

stated principles in deciding whether the trial court erred in enforcing the indemnity agreement as written.

¶ 14 Instantly, the question presented does not concern whether the parties expressed in "clear and unequivocal language" their intent to cover losses due to the indemnitee's own negligence. Rather, the specific question presented by this appeal goes further and asks whether the parties intended to cover the indemnitee for loss occasioned by its **grossly** negligent conduct. P.J. Dick argues it never intended to provide indemnity for Wheeling–Pitt's gross negligence; therefore, the indemnity contract is unenforceable in light of the jury's finding of gross negligence. In contrast, Wheeling–Pitt argues the contract is enforceable as written because " 'gross negligence' is simply a species of negligence . . . and a contract to indemnify for negligence [necessarily] includes different types of 'negligence.' " Wheeling–Pitt's Brief at 14–15.

¶ 15 With regard to clauses purporting to cover losses occasioned by the indemnitee's own negligence our Supreme Court notes:

> liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, . . . there can be no presumption that the indemnitor intended to assume the responsibility [for the indemnitee's negligence] unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it.

*Perry v. Payne*, 217 Pa. 252, 262, 66 A. 553, 557 (1907). Given the requirement of specificity and the fact this agreement is silent with respect to gross negligence, we find such silence dictates its exclusion. Because our rules require us to strictly construe such agreements against its drafter and the indemnity language drafted by Wheeling–Pitt does not express a clear, unequivocal, or definite intent to include coverage for damages where Wheel-

ing–Pitt's gross negligence caused the accident, this Court holds P.J. Dick did not contract to be bound in such instances.

¶ 16 In holding P.J. Dick liable for indemnity the trial court did not apply any rules of construction. Rather, its rationale was based solely upon a comparison of the instant language and that used in a similar broadly worded provision that was upheld in *Valloric v. Dravo Corp.*, 178 W.Va. 14, 357 S.E.2d 207 (1987). The trial court's reliance on *Valloric* is misplaced. The parties therein did not even challenge whether the indemnity agreement evidenced a clear intent to provide indemnification for the indemnitee's own negligence, let alone gross negligence. The question in *Valloric* concerned whether the indemnitees had to first prove they were actually liable to the plaintiffs before pursuing indemnity, or whether it was sufficient to show that at the time of settlement they had a reasonable belief they were potentially liable.

¶ 17 Presently, we are asked whether an express provision concerning negligence also includes gross negligence within its scope. On this specific issue the parties do not cite any authority in either West Virginia or this Commonwealth nor has this Court found any case directly on point. However, courts have considered the concept of gross negligence in other contexts, which uniformly reflect there is a substantive difference between ordinary negligence and gross negligence. The general consensus finds gross negligence constitutes conduct more egregious than ordinary negligence but does not rise to the level of intentional indifference to the consequences of one's acts.

¶ 18 For example, this Court previously defined gross negligence in the context of the immunity provision of the Mental Health Procedures Act (MHPA) [1]:

> It appears that the legislature intended to require that liability be premised on facts indicating more egregiously devi-

---

1. 50 P.S. § 7114(a).

ant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

*Bloom v. DuBois Regional Medical Center*, 409 Pa.Super. 83, 597 A.2d 671, 679 (1991) (quoted with approval in *Albright v. Abington Memorial Hospital*, 548 Pa. 268, 278, 696 A.2d 1159, 1164 (1997)). *See also, Ferrick Excavating v. Senger Trucking*, 506 Pa. 181, 484 A.2d 744 (1984) (quoting *First National Bank of Carlisle v. Graham*, 79 Pa. 106, 116, 1875 WL 13115 (1875) (describing differing standards of care applicable in bailment cases: "Where one undertakes to perform a gratuitous act, from which he is to receive no benefit, and the benefit is to accrue solely to the bailor, the bailee is liable only for gross negligence.... It is that omission of care which even the most inattentive and thoughtless men take of their own concerns. There is this marked difference in cases where ordinary diligence is required, and where a party is accountable only for gross neglect.")).

¶ 19 West Virginia also recognizes a difference between ordinary and grossly negligent conduct. In *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997) the West Virginia Supreme Court of appeals, in determining whether a general release absolved the defendant from a tortious interference claim, states:

It is well established in this jurisdiction that when a person gives another entity a release, the release does not absolve a party from liability for the party's intentional, reckless or grossly negligent conduct. *See Murphy v. North Am. River Runners, Inc.*, 186 W.Va. 310, 316, 412 S.E.2d 504, 510 (1991) (stating that "a general clause in an exculpatory agree-

ment or anticipatory release exempting the defendant from all liability for any future negligence will not be construed to include intentional or reckless misconduct or gross negligence, unless such intention clearly appears from the circumstances") (citing Restatement (Second) of Torts § 496B cmt. d (1963, 1964)). Moreover, 'in order for the express agreement ... [to release from all liability or responsibility all persons, places or business, and municipalities supplying such information] to be effective, it must also appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm.'

*Id.* 203 W.Va. at 126, 506 S.E.2d at 569.

¶ 20 Additionally, gross negligence has also been described as "the want of even scant care" and "the failure to exercise even that care which a careless person would use." W. Keeton, D. Dobbs, R. Keeton & D. Owens, Prosser and Keeton on Torts, § 34 at 183 (5th ed.1984). *See also, County of Sacramento v. Lewis*, 523 U.S. 833, 863, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (describing the type of conduct necessary to satisfy the deprivation standard of the due process clause as "something less than intentional conduct, such as recklessness or gross negligence."); *Ambrose v. New Orleans Police Dept. Ambulance Serv.*, 639 So.2d 216, 219–20 (La. 1994) (internal quotations and citations omitted) (stating "Gross negligence has been defined as the want of that diligence which even careless men are accustomed to exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care."); and BLACK'S LAW DICTIONARY, defining gross negligence as "[a] lack of slight diligence or care," and "[a] conscious, voluntary act or omission in reckless disregard of a legal

duty and of the consequences to another party...." BLACK'S, 1057 (7th Ed.1999).

¶ 21 Since gross negligence is clearly more egregious than ordinary negligence, the rule of strict construction is even more appropriate in the case of indemnity for accidents caused by one's gross negligence. In other words, this Court will not read the term "gross negligence" into an indemnity provision in which it is not specifically manifested. If it had been the intention of the parties to cover liability for gross negligence, it requires no extraordinary skill in draftsmanship to so bind a contractor in words and phrases of absolute certainty as to require him to indemnify the owner for its gross negligence.[2] Accordingly, we reject as violative of the above stated rules of construction Wheeling–Pitt's self-serving notion that the mere use of the term negligence encompasses gross negligence. Such a construction would put the indemnitor at the mercy of the indemnitee's conduct without knowing precisely what types of conduct it was willing to accept in shifting the risk of loss. Only by applying the clear and unequivocal rule to indemnification agreements seeking to extend to and cover the indemnitee's grossly negligent conduct can the courts be sure that the indemnitor was fully cognizant of the extraordinary risk that it was assuming.[3] Since this issue is dispositive we need not address the remaining questions presented by P.J. Dick's appeal and turn our attention to the cross appeal of Wheeling–Pitt. *Commonwealth v. Brennan*, 696 A.2d 1201, 1205 n. 5 (Pa.Super.1997).

### CROSS–APPEAL OF WHEELING–PITT (956 WDA 1999)

¶ 22 Wheeling–Pitt's cross-appeal asserts:

1. DID THE LOWER COURT ERR IN ITS DECISION TO DENY WHEELING–PITTSBURGH'S MOTION TO AWARD INTEREST AND TO ENTER JUDGMENT?
2. DID THE LOWER COURT ERR IN ITS DECISION TO DENY WHEELING–PITTSBURGH'S PROPOSED AMENDMENT OF THE COMPLAINT TO JOIN TO INCLUDE A CLAIM FOR DAMAGES FOR RETROACTIVE INCREASE IN INSURANCE PREMIUMS ON ACCOUNT OF THE PROPERTY DAMAGE CAUSED BY THE EXPLOSION IN QUESTION?
3. DID THE LOWER COURT ERR IN ITS DECISION TO DENY WHEELING–PITTSBURGH'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE ISSUE OF GROSS NEGLIGENCE ONLY?
4. DID THE LOWER COURT ERR IN ITS DECISION TO DENY WHEELING–PITTSBURGH'S ALTERNATIVE MOTION FOR A NEW TRIAL ON THE ISSUE OF GROSS NEGLIGENCE ONLY?

Wheeling–Pitt's Brief at 5.

¶ 23 Since we have determined that P.J. Dick is not liable for Wheeling–Pitt's gross negligence pursuant to the instant indemnity contract, the first two issues are moot, and we need only address issues 3 and 4. Wheeling–Pitt argues it was entitled to a JNOV on the issue of gross negligence because the issue was not raised in P.J. Dick's Answer and New Matter, the evidence was insufficient to sustain such a finding, and; the issue was irrelevant to its claim of indemnity. We disagree.

When reviewing the propriety of an order granting or denying judgment

---

2. For example "any negligence, including gross negligence, of the Owner, the General Contractor, or the Subcontractor, his or their employees or agents or any other person."

3. Given the lack of specificity we need not decide whether an explicit agreement covering gross negligence would be void as against public policy.

notwithstanding the verdict, we must determine whether there is sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences.... Pennsylvania law makes clear that a judgment notwithstanding the verdict is proper only in clear cases where the facts are such that no two reasonable minds could disagree that the verdict was improper. Questions of credibility and conflicts in evidence are for the fact-finder to resolve. This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned.

*Birth Ctr. v. St. Paul Cos.*, 727 A.2d 1144, 1163–64 (Pa.Super.1999), *appeal granted,* 560 Pa. 633, 747 A.2d 858 (2000) (citations omitted).

■■■■ ¶ 24 As to the sufficiency of the pleadings, we have previously held in *Bloom, supra,* the lack of the term gross negligence in a complaint will not necessarily result in a finding of inadequacy of the pleadings. Our focus is not on the use of magic words rather "the adequacy of the complaint must be judged by examination of the facts pled, and not of the conclusions of law that accompany them." *Bloom,* 597 A.2d at 677, n. 7. The record belies Wheeling–Pitt's first argument.[4] Our review of the complaint, along with P.J. Dick's Answer, New Matter and New Matter Pursuant to Pa.R.C.P. Rule 2252(d), reveals sufficient averments raising the issue of gross negligence. Specifically, the Rattis' Complaint, which was incorporated by P.J. Dick in its New Matter Pursuant to Rule 2252(d), alleged that the negligence, recklessness, and carelessness of Wheeling–Pittsburgh included the following conduct: failing to warn Mr. Ratti of the existence of an unsafe condition in his work area; carelessly and recklessly causing and permitting explosive gases to accumulate at or near the top of the saturator vessel even though Wheeling–Pittsburgh knew or should have known of the nature of the work which Mr. Ratti was to perform in that area; and, carelessly and recklessly directing and/or permitting Mr. Ratti to work in an area where Wheeling–Pittsburgh knew or should have known that explosive gases had been permitted to accumulate. Certified Record at 1, Rattis' Complaint ¶ 9.

¶ 25 Additionally, P.J. Dick made the following allegation in its Answer, New Matter, and New Matter Pursuant to Rule 2252(d): "[t]he purported indemnity agreement set forth in the complaint to join this additional defendant is void for vagueness and inconspicuousness. It is further void as against public policy." C.R. at 26, P.J. Dick's New Matter ¶ 20. P.J. Dick also averred that Wheeling–Pitt "is not entitled to indemnity, to be held harmless or to be defended in the facts of this case under the wording of the purported indemnity agreement." *Id.* at ¶ 22. We find these allegations taken as a whole are sufficient to raise the issue of gross negligence as it relates to P.J. Dick's defense that Wheeling–Pitt is not entitled to indemnity for its own gross negligence due to a lack of specificity in the agreement. *See also, Rhines v. Herzel,* 481 Pa. 165, 392 A.2d 298 (1978) (finding allegation that state hospital employee allowed homicidal mental patient otherwise requiring maximum security to associate with victim sufficiently pled gross negligence); *Freach v. Commonwealth,* 471 Pa. 558, 370 A.2d 1163 (1977) (holding pleadings sufficient where complaint alleges hospital employees did not properly treat and unlawfully released a patient who had murdered and molested children and who upon release was employed as a special policeman and murdered two children).

---

**4.** In resolving P.J. Dick's appeal we have already determined Wheeling–Pitt's relevance argument is without merit, thus further discussion is not warranted.

¶ 26 Moreover, we find more than sufficient evidence to sustain the jury's finding of gross negligence. The testimony revealed that prior to performing any welding on the saturator vessel Wheeling–Pitt's safety standards required a steam purge to be in operation. Admittedly, on the day of the accident the steam purge was turned off by a Wheeling–Pitt employee in order to allow repair of the skimmer pot, which work was unrelated to the work being performed by Mendel Steel and P.J. Dick under the contract. Further, Wheeling–Pitt's foreman, Mr. DeFabo, acknowledged he issued a Burning/Welding Permit certifying the steam purge was on just prior to the start of the welding when in fact he knew it had been turned off. Deposition of Mr. DeFabo, R.R. 1484a–1486a.[5] Additionally, the Rattis' expert testified Wheeling–Pitt's conduct in turning off the purge and failing to engage a follow-up purge with nitrogen gas was a "gross safety violation." Videotaped Deposition of James Mulvihill, R.R. at 1658a. He further described Wheeling–Pitt's conduct in issuing a Burning and Welding Permit with knowledge the steam purge was turned off as "grossly violat[ing] their own safety procedures." *Id.* at 1662a. This witness similarly opined Wheeling–Pitt's actions in failing to notify P.J. Dick of the steam purge shut down and failing to tag out or lock out its own valves constituted a "gross, flagrant violation of safety." *Id.* at 1706–1707a, 1740a. Viewing this evidence in the light most favorable to the verdict winner and giving the verdict winner the benefit of every reasonable inference arising therefrom, we find no difficulty in determining there was sufficient evidence to sustain the jury's verdict on the issue of gross negligence.

¶ 27 Alternatively, Wheeling–Pitt argues it is entitled to a new trial on the issue of gross negligence due to the court's error in excluding the testimony of Robert Kolanko and in providing the jury with an allegedly incomplete copy of an exhibit.

¶ 28 Initially, we note:

[o]ur standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.

*Foflygen v. Allegheny General Hospital,* 723 A.2d 705 (Pa.Super.1999), *appeal denied,* 559 Pa. 705, 740 A.2d 233 (1999) (citations and internal quotation marks omitted).

¶ 29 Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 636 (Pa.Super.1997), *appeal denied,* 551 Pa. 704, 712 A.2d 286 (1998). In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. *Kehr Packages, Inc. v. Fidelity Bank,* 710 A.2d 1169, 1172 (Pa.Super.1998). For evidence to be admissible, it must be both competent and relevant. *Peled v. Meridian Bank,* 710 A.2d 620, 625 (Pa.Super.1998), *appeal denied,* 556 Pa. 711, 729 A.2d 1130 (1998). Evidence is competent if it is material to the issue to be determined at trial, and relevant if it

---

5. For ease of reference we cite to the reproduced record (R.R.) for matters, i.e., oral and videotaped depositions, which were made part of the record but not transcribed in the notes of testimony by the court reporter during trial.

tends to prove or disprove a material fact. *Turney Media Fuel, Inc. v. Toll Brothers*, 725 A.2d 836, 839 (Pa.Super.1999). Relevant evidence is admissible if its probative value outweighs its prejudicial impact. *Commonwealth v. Schwartz,* 419 Pa.Super. 251, 615 A.2d 350, 359 (1992), *appeal denied,* 535 Pa. 617, 629 A.2d 1379 (1993).

■ ¶ 30 In its case in chief Wheeling–Pitt attempted to call one of its foreman, Mr. Kolanko, to testify that a few days prior to the accident he instructed employees of P.J. Dick and Mendel Steel they were still required to monitor the steam coming from the vent pipe despite the issuance of a welding permit. P.J. Dick objected on the basis that Mr. Kolanko was incompetent to offer his opinion as to what P.J. Dick's duties were under the contract as he was not familiar with the contractual duties. Additionally, P.J. Dick argued such testimony would be prejudicial, as it would confuse the jury as to who was contractually bound to monitor the purge. The trial court agreed with P.J. Dick and sustained its objection. We likewise agree there was no error or abuse of discretion in precluding such testimony.

■ ¶ 31 In order to be a competent witness one must have personal knowledge of the matter about which he testifies. Pa.R.E. 602. Moreover, when expressing a lay opinion the witness is "limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Pa.R.E. 701; *Watson v. American Home Assurance Co.*, 454 Pa.Super. 293, 685 A.2d 194 (1996), *appeal denied,* 549 Pa. 704, 700 A.2d 443 (1997); *Foflygen, supra.* "If the trial judge decides that the proffered opinion would not be helpful, or even if helpful, would confuse, mislead, or prejudice the jury, or would waste time, he may exclude it." *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941, 949 (1978).

¶ 32 In essence the proffered testimony would have consisted of nothing more than Mr. Kolanko's belief as to what the parties' respective obligations were with regard to the monitoring of the steam purge based upon second hand information or mere speculation. Wheeling–Pitt failed to provide the requisite foundation in that no showing was made Mr. Kolanko was involved in drafting or negotiating the contract documents or had gained personal knowledge of their contents. Moreover, to the extent the testimony's purpose was to only show P.J. Dick and Mendel Steel were apprised of certain additional safety procedures we find such testimony would have been irrelevant, as it relates to knowledge of employees not identified and apparently not working at the time of the accident. Furthermore, any relevance this evidence may have had was outweighed by its tendency to confuse or mislead the jury into concluding the contractual obligation for monitoring the purge had been shifted to P.J. Dick and/or Mendel Steel. This is especially true in light of the preceding evidence indicating Wheeling–Pitt's acknowledgement that it had the contractual duty to monitor the purge and certify its operation at the time of welding by issuance of the Burning Permit. Accordingly, we cannot say the trial court's preclusion of Mr. Kolanko's testimony represents an abuse of discretion resulting in prejudice to Wheeling–Pitt's case.

¶ 33 Next, Wheeling–Pitt asserts the trial court erred in refusing to allow Mr. Kolanko to testify on rebuttal. Wheeling–Pitt argues the same evidence it attempted to present in its case in chief should have been admitted as of right in rebuttal because it would have served to impeach a portion of P.J. Dick's expert testimony.

■ ¶ 34 Generally, the admission of rebuttal evidence is a matter within the sound discretion of the trial court. *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261 (2000). Rebuttal evidence is proper where it is offered to discredit testimony of an opponent's witness. *Remy v.*

*Michael D's Carpet Outlets*, 391 Pa.Super. 436, 571 A.2d 446 (1990). Our Supreme Court has previously opined "where the evidence proposed goes to the impeachment of his opponent's witness, it is admissible as a matter of right." *Clark v. Hoerner*, 362 Pa.Super. 588, 525 A.2d 377, 386 (1987) (quoting *Feingold v. Southeastern Pa. Transp. Authority*, 512 Pa. 567, 576, 517 A.2d 1270, 1274 (1986)). Furthermore, in order to constitute proper impeachment evidence the rebuttal witness' version of the facts must differ from that of the witness allegedly being impeached. *Id.* Instantly, we find the proffered rebuttal evidence was properly excluded, as it does not serve to rebut the testimony of P.J. Dick's expert.

¶ 35 Counsel for Wheeling–Pitt on re-cross-examination elicited the testimony that Wheeling–Pitt claims is subject to rebuttal. Specifically, the following colloquy took place:

Q. Let me just read the last sentence [of the Kaiser specs at Paragraph 4.4.2]. "Contractor will continuously perform gas check during welding and burning." Does that tell the contractor to check the inside of the vessel?

A. It doesn't say to check the inside of the vessel.

Q. Does it tell the contractor not to check the inside of the vessel?

A. It doesn't say that either. It just says do a gas check.

Q. Do a gas check. It's up to the contractor to determine where?

A. The contractor was shown where to take the gas checks by the Wheeling–Pitt personnel, Mr. Weinch. He actually took the primary readings, and then he showed the contractor; and as a further item, he actually—if I remember correctly, he had the meter calibrated. You know, they offered to calibrate the meter. So they actually showed where to take the readings, and it was pointed out by Wheeling–Pitt personnel where to take the readings.

Q. Let me ask my question again.

A. Okay.

Q. Listen more carefully if you would this time.

A. All right.

Q. Does the Kaiser specification tell the contractor in Paragraph 4.4.2 where to continuously perform the gas checks during welding and burning?

A. No. It doesn't say specifically.

Q. Does the Kaiser specification anywhere else in the entire specification tell the contractor, P.J. Dick, where to continuously perform gas check during welding and burning?

A. It doesn't say it in the spec.

Videotaped Deposition of James Mulvihill, 1/20/97, R.R., at 1745a–1746a.

¶ 36 The testimony Wheeling–Pitt sought to introduce would have indicated Mr. Kolanko told P.J. Dick personnel that in addition to taking gas readings with a meter they were also required to keep an eye on the vent pipe at the top of the vessel to see if steam was being emitted, so as to assure the purge was in operation. Such evidence does not in any manner contradict the testimony given by Mr. Mulvihill. Mr. Mulvihill merely testified that Wheeling–Pitt's personnel showed P.J. Dick's personnel where to take readings of the ambient air with the meter; he does not mention anything about P.J. Dick's personnel not being told to also watch the purge vent pipe for escaping steam. There simply was no inquiry, let alone a contrary response, concerning the subject matter sought to be introduced in rebuttal. Moreover, Wheeling–Pitt offered evidence in its case in chief that P.J. Dick was only instructed to monitor the ambient air in the area where the work was being performed and P.J. Dick was not required to sample air coming out of the vent pipe. N.T., Trial, 1/23–29/97, at 205–208, 222, 305–37, 313–314. Thus, Mr. Mulvihill's testimony was supportive and not contradictory of the testimony offered in Wheel-

ing–Pitt's case in chief. Accordingly, this contention is without merit.

■ ¶ 37 Wheeling–Pitt's final contention is the trial court erred in removing a certain page from Exhibit No. WP–364 (Wheeling–Pitt Safety Manual) requested by the jury during deliberations. Wheeling–Pitt argues it referred to the language on the removed page in its closing and specifically told the jury to read the safety manual, which had been admitted into evidence in its entirety. Wheeling–Pitt maintains the subsequent removal of the page without apprising the jury it had been removed acted to its prejudice by making it appear counsel had misled them as to the responsibilities of the contractor. We disagree.

■ ¶ 38 The determination of what documents should go out with the jury is within the discretion of the trial judge. *Wagner by Wagner v. York Hospital*, 415 Pa.Super. 1, 608 A.2d 496, 503 (1992), *appeal discontinued*, 532 Pa. 646, 614 A.2d 1143 (1992) (citing *Mineo v. Tancini*, 349 Pa.Super. 115, 502 A.2d 1300 (1986)). After review of the record we cannot conclude the trial court abused its discretion in removing the introductory page before sending out the safety manual to the jury.

¶ 39 The language on the page at issue states: "The safety of all persons employed by the seller and his/her subcontractors on purchaser's premises, or any other person who enters upon purchaser's premises for reasons relating to this contract, shall be the sole responsibility of seller." Supplementation of Record by Filing WP–4 and WP–364, R.R. at 1936a. In order to place Wheeling–Pitt's argument in context we note the trial court decided at the conclusion of the trial not to send out the safety manual with the jury, and the jury did not subsequently request the entire safety manual. The only portion requested related to the safety requirements involved in issuing a Burning Permit. It was at this point that counsel for Wheeling–Pitt demanded that the en-

tire document, with the redaction of references to insurance, be submitted to the jury. Counsel for P.J. Dick objected on the basis the general provisions at the beginning of the manual contained overly broad language imposing a standard of absolute liability on P.J. Dick. P.J. Dick argued such provision was irrelevant and prejudicial, as strict liability was not an issue in the case. Moreover, these general provisions conflicted with the trial court's instruction regarding the standard of care imposed upon P.J. Dick and would only serve to confuse or mislead the jury.

¶ 40 In deciding to send the entire safety manual without the introductory page containing the above quoted language the trial court stated:

> I want to put my reasons for the rationale on the record, and that is that there are clauses on the first page, the unnumbered first page under the title General Safety Requirements. There are various clauses in there that appear [sic] to this Court to apply a standard of strict liability upon a contractor entering the premises, and his subs, for doing work on the premises. That is not the case that we are dealing with here, and counsel for the defendant, Wheeling–Pittsburgh, has indicated that that's not a part of this case, but it's so misleading that it would require such an extensive explanation to the jury, that we might as well go through another half day of trial in order to explain what these various provisions mean. And that strict liability is mentioned several other times in here in certain ways, such as in the second paragraph where it states, 'The safety of all persons shall be the sole responsibility of the seller, that is, the contractor and/or subcontractor'. That is absolutely not in this case either. That is not in this case at all.

N.T., Trial, 1/23–29/97, at 601–602.

¶ 41 We agree with the trial court's rationale. Furthermore, Wheeling–Pitt's argument that its closing was premised on the jury being able to review the safety

manual is unpersuasive. While counsel may have assumed as much, such an assumption was unfounded. The court made the parties aware its decision on what would be sent out with the jury would not be made until the end of trial. Thus, counsel for Wheeling–Pitt had no reason to assume the jury would ever have the opportunity to review any portion of the safety manual. In light of the fact strict liability was not an issue and the jury only requested the section of the safety manual relating to the Burning Permit, this Court finds the verdict was not prejudiced as a result of the omission of the page containing the general provisions of the safety manual.

¶ 42 Based on the foregoing, we conclude the trial court erred in interpreting the agreement as providing indemnity for Wheeling–Pitt's grossly negligent conduct. Accordingly, we reverse the judgment entered in favor of Wheeling–Pitt on its indemnity claim and remand for entry of judgment in favor of P.J. Dick. Further, we affirm the trial court's Order denying Wheeling–Pitt's motions for a JNOV and new trial on the issue of gross negligence. The cross-appeal of Mendel Steel is quashed. Jurisdiction relinquished.