**Wolfe v. Glenn**

C.P. of Chester County, no. 95-06483.

*Dennis B. Young*, for plaintiff Wolfe.
*Richard A. Sprague* and *Geoffrey Johnson*, for plaintiff Norton.
*Thomas P. Moribondo*, for plaintiff Marlowe.
*Andrew J. Bellwoar*, for defendant Glenn.
*Gerald A. Hughes* and *Samuel E. Klein*, for defendants Troy Publishing, Kennedy and Caufield.

GAVIN, *J.*, January 19, 2001—This is an action for defamation. Presently before the court are the post-trial motions of plaintiffs Alan M. Wolfe and James B. Norton III, as well as the post-trial motion of defendant William T. Glenn Sr. For the reasons that follow, I will deny the motions of Wolfe, Norton and Glenn.

### BACKGROUND

The genesis of this lawsuit is an article that appeared in the newspaper the *Chester County Daily Local* on

April 20, 1995. The article, headlined "Slurs, insults drag town into controversy" involved the fallout from a special meeting of the Parkesburg Borough Council which had been held the previous evening. On that date, council president, plaintiff James Norton, sought to "end the fighting and name calling" which had been occurring at council meetings. The article published comments made by defendant Glenn, then also a member of council, about Norton, Parkesburg Mayor Alan M. Wolfe, and Borough Solicitor James J. Marlowe. In the article, defendant Glenn characterized Wolfe and Norton as "queers" and "child molesters" and quoted him as calling plaintiff Marlowe a "shyster Jew." The article was written by defendant Tom Kennedy, then an employee of the *Daily Local,* which is owned by defendant William Caufield and published by defendant Troy Publishing. Plaintiffs subsequently filed suit for defamation and false light invasion of privacy.

Prior to trial, all defendants filed motions for summary judgment. By order dated August 2, 1999, the Honorable Paula Francisco Ott granted defendant Glenn's motion for summary judgment as to plaintiff Marlowe, and denied the motion as to plaintiffs Norton and Wolfe. Judge Ott also denied the motion for summary judgment filed by Troy Publishing Company, Tom Kennedy and William Caufield, but ordered that the jury at the trial of this matter "be instructed on the fair report privilege."

Trial began before a jury on March 27, 2000. On March 31, 2000, the jury returned a verdict in favor of plaintiff Norton and against defendant Glenn and awarded $10,000 compensatory and $7,500 punitive

damages. The jury returned the identical verdict as to plaintiff Wolfe. Defendants Troy Publishing Company, Tom Kennedy and William Caufield (the media defendants) were found not liable to plaintiffs. James Norton and Alan Wolfe have now filed post-trial motions requesting a new trial as to the media defendants. Defendant Glenn has also filed post-trial motions requesting a judgment n.o.v. or a new trial.

## DISCUSSION

A judge considering a party's post-trial motions can order a new trial if he concludes that a factual or legal mistake was made at the trial level and, under the circumstances of the particular case, the mistake formed a sufficient basis to order a new trial. *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 262, 705 A.2d 422, 425 (1997). Plaintiff Norton has raised 22 matters in his post-trial motion which he claims entitle him to a new trial. Plaintiff Wolfe has raised 18. The matters raised involve only three main issues, however, and will be discussed as such. Norton and Wolfe first argue that the court erred in adopting the neutral reportage privilege.[1]

Under the neutral reportage doctrine, a reporter is privileged to publish the serious charges of a public official involved in an ongoing controversy and concerning other public officials irrespective of the publisher's belief as to the falsity of the charges, provided

1. This issue is raised in paragraphs 1, 2, 3, 4 and 5 of plaintiff Norton's motion and paragraphs 1, 2, 9 and 10 of plaintiff Wolfe's motion for post-trial relief.

that the reporter does not espouse or concur in the charges and in good faith believes that the report accurately conveys the charges made. *DiSalle v. P.G. Publishing Company,* 375 Pa. Super. 510, 544, 544 A.2d 1345, 1363 (1988). The *DiSalle* court explained two reasons for the necessity of such a broad privilege at 375 Pa. Super. at 544, 544 A.2d at 1363:

"If the party making the false charge is a public official, it is essential for the public to be informed of the calumny of those upon whom it has bestowed its trust, and thereby to better supervise their conduct. Similarly, if a public figure, embroiled in a controversy, levels false accusations against others involved in the same contest, the public's ability to weigh the merits of the vying positions is greatly enhanced by the publication of the charges."

On August 2, 1999, Judge Ott held that the neutral reportage privilege applied to this case, and that any jury hearing the matter was to be instructed on the privilege. Judge Ott determined that the facts of this case "fit squarely" within the privilege as described in *DiSalle,* and specifically noted that, "the facts of this case cry out to allow the opportunity for the press to repeat what a defaming public official says about his fellow public officials, all of whom are eventual candidates for re-election." Memorandum opinion at 10. I have attached a copy of Judge Ott's opinion as exhibit "A." Judge Ott's holding is determinative of the plaintiffs' first set of claims because of the application of the coordinate jurisdiction rule.

The coordinate jurisdiction rule has long been recognized by the Pennsylvania Supreme Court. *Riccio v.*

*American Republic Insurance Co.,* 550 Pa. at 260, 705 A.2d at 425. Under this rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *Id.* The coordinate jurisdiction rule falls within the law of the case doctrine, which serves not only to promote the goal of judicial economy, but also operates: "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Commonwealth v. Starr*, 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995).

A court may depart from these rules only in "exceptional circumstances" such as where there has been an intervening change in the law, a substantial change in the facts or evidence, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Id.* at 575-76, 664 A.2d at 1332. Since none of these exceptions applies to this case, Judge Ott's holding that the neutral reportage privilege applied is the law of the case, and the plaintiffs are not entitled to post-trial relief on their claims that the court erred in adopting the neutral reportage privilege.

Plaintiffs' next group of claims involves the application of the neutral reportage privilege to the facts of this case.[2] In this claim of error, plaintiffs object to various of this court's evidentiary rulings, the limitations

---

2. This issue is raised in paragraphs 8-19 of plaintiff Norton's motion and paragraphs 3-7 and 11-16 of plaintiff Wolfe's motion for post-trial relief.

placed on their arguments to the jury, and to this court's charge to the jury. Plaintiffs argue that I improperly precluded them from presenting evidence showing abuse of the neutral reportage privilege, including evidence that defendant Glenn was not a responsible source and evidence of the course of conduct between Glenn and defendant Kennedy prior to April 19, 1995. Plaintiffs also argue that I erred in not charging the jury that the privilege does not apply to investigative reporting. I disagree, as such evidence would have been irrelevant.

In *DiSalle,* 375 Pa. Super. at 541, 544 A.2d at 1361, Judge Cirillo made it crystal clear that, with neutral reportage, "the subjective awareness of the republisher that the statement is false becomes irrelevant." In fact, "because neutral reportage intends to protect the publication of statements known to be false, the purported reliability of the source is *totally irrelevant." Id.* at 542, 544 A.2d at 1362. (emphasis added) Judge Cirillo also described exactly how the neutral reportage privilege can be lost: "The privilege . . . will be preserved only if the reporter neither espouses nor concurs in the charge and in good faith believes the report accurately conveys the charges made." *Id.* at 544-45, 544 A.2d at 1363.

The evidence proffered by the plaintiffs was refused because none of it concerned the only relevant inquiry, whether defendant Kennedy espoused or concurred in Glenn's charges and whether he in good faith believed that the report accurately conveyed the charges made. See N.T. 3/28/00 pp. 168, 173-74, 180-83, 299, 302, 303, 312, 343. The admission or exclusion of evidence is within the discretion of the trial court, and for evidence to be admissible it must be both competent and

relevant. *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 707 (Pa. Super. 2000). Evidence is relevant if it tends to prove or disprove a material fact. *Id.* at 708. Since none of the evidence offered met this test, it was not error to preclude its introduction, the plaintiffs' arguments to the jury on the refused evidence, and my refusal to charge to the jury on issues raised by the precluded evidence. Accordingly, plaintiffs are not entitled to relief on this claim of error.

Plaintiffs' third claim of error involves the issue of "actual malice." The United States Supreme Court, in *New York Times v. Sullivan,* 376 U.S. 254 (1964), held that if the plaintiff is a public figure, he or she must show that a defendant acted with "actual malice" in publishing the defamatory matter. Actual malice means that the defendant acted with knowledge that the statement was false, or with reckless disregard of whether it was false or not. *Id.* at 280.

In the instant matter, the jury found that the media defendants had not published the offending article with actual malice. However, plaintiffs argue that they were precluded from hearing all of the evidence on this issue, and are, therefore, entitled to a new trial.[3]

In her opinion deciding the defendants' motions for summary judgment, Judge Ott recognized that holding that the neutral reportage privilege applied to this case eliminated the necessity of a determination of actual malice as to the media defendants. This is so because

_____

3. This issue is raised in paragraphs 6, 7, 10 and 20-22 of plaintiff Norton's motion and paragraphs 8, 11-12, 14 and 17-18 of plaintiff Wolfe's motion for post-trial relief.

the privilege anticipates a broader protection to the media than that provided by the "actual malice" standard, and that the "press may [not] be required under the First Amendment to suppress newsworthy statements merely because it has serious doubts regarding their truth." *DiSalle* at 539, 544 A.2d at 1360, quoting *Edwards v. National Audubon Society,* 556 F.2d 113, 120 (2d Cir. 1977).

The plaintiffs claim that I erred in excluding evidence concerning whether the media defendants acted with actual malice in publishing the article of April 20, 1995. Plaintiffs are correct that I did not permit certain of their evidence regarding this issue at trial. I so ruled because the neutral reportage privilege does offer broader protection than the actual malice standard, and under the neutral reportage privilege the evidence offered was irrelevant. However, should an appellate court determine that the neutral reportage privilege does not apply to this case, plaintiffs would be entitled to a new trial due to my exclusion of their evidence on the issue of actual malice.

Finally, I address defendant Glenn's post-trial motion. In it he claims that he is entitled to judgment n.o.v. because he is a high public official with absolute immunity from suit for the statements he made.

The standard of review when determining whether to enter a judgment n.o.v. is clear, "judgment n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper." *Ferry v. Fisher,* 709 A.2d 399, 402 (Pa. Super. 1998).

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Campo v. St. Luke's Hospital,* 755 A.2d 20, 23 (Pa. Super. 2000) (quoting *Moure v. Raeuchle,* 529 Pa. 394, 402-403, 604 A.2d 1003, 1007 (1992)). Defendant argues that the court erred in not granting judgment as a matter of law in his favor on the basis of high public official immunity.

The Pennsylvania Supreme Court explained the doctrine of absolute privilege for high public officials in *Matson v. Margiotti,* 371 Pa. 188, 194, 88 A.2d 892, 895 (1952). The privilege:

"Exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as is sometimes expressed, within his jurisdiction.*" (emphasis in original)

Defendant claims that since his statements were made within the course and scope of his official duties, the statements are protected by this immunity. He argues

that the statements occurred in the context of "bitter political infighting" and that he was attempting to inform the public of what he perceived to be a conspiracy against him and misconduct on the part of the plaintiffs involving matters of public concern.

Judge Ott, relying on the case of *Suppan v. Kratzer,* 660 A.2d 226 (Pa. Commw. 1995), found that defendant Glenn was, in fact, a high public official. However, she found that the privilege did not apply because he was not acting within the scope of his office when he commented on the alleged sexual activities of the plaintiffs. In *Mosley v. Observer Publishing Company,* 422 Pa. Super. 255, 261, 619 A.2d 343, 346 (1993), the Superior Court stated that, given the great potential for harm, the privilege must be limited to those statements which are "closely related" to the performance of the defendant's official duties. No testimony offered at the trial of this matter leads me to disagree with Judge Ott's determination of this issue and find that defendant's comments were so closely related to his official duties as to immunize him from suit. Accordingly, defendant Glenn is not entitled to post-trial relief.

## ORDER

And now, January 19, 2001, the motions for post-trial relief of plaintiff Alan M. Wolfe, plaintiff James B. Norton, and defendant William T. Glenn Sr. are denied.