937 A.2d 1162 (2007)
Robert A. SWIFT and C. Meredith H. Swift, Appellants
v.
The DEPARTMENT OF TRANSPORTATION OF the COMMONWEALTH of Pennsylvania; Radnor Township; Haverford Township; and the School District of Haverford Township.
Commonwealth Court of Pennsylvania.
Argued October 29, 2007.
Decided December 7, 2007.
*1164 Robert A. Swift, Philadelphia, for appellants.
Joel West Williams, Asst. Counsel, King of Prussia, for appellee, Department of Transportation.
David G. Blake, Media, for appellee, Radnor Township.
Suzanne McDonough, Media, for appellee, Haverford Township.
W. Bourne Ruthrauff, Philadelphia, for appellee, School District of Haverford Township.
BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, and FLAHERTY, Senior Judge.
OPINION BY Senior Judge FLAHERTY.
Robert A. Swift and C. Meredith H. Swift (Appellants) appeal from an order of the Court of Common Pleas of Delaware County (trial court) which denied Appellants' post-trial motions following a non-jury trial in which the trial court denied Appellants' claims for relief from the actions and inactions of the Department of Transportation (Department), Radnor Township, Haverford Township, and the School District of Haverford Township (School District)(Collectively, Appellees), based on a private nuisance in allowing erosion of a water course on Appellants' property. We affirm.
In 1979, Appellants purchased a home on one acre of ground located at 328 Highland *1165 Lane in Bryn Mawr, Radnor Township (Property or Appellants' property). The Property is near the intersection of Coopertown Road, a Commonwealth highway, and Highland Lane, a road that is owned by both Haverford and Radnor Townships. Coopertown Road and Highland Lane form the boundary between Haverford Township and Radnor Township.
At the time Appellants purchased the Property, there was an existing natural waterway which separated the back one-third (back) of the Property from the front two-thirds (front). The only access to the back is across the waterway. At the time of purchase, a title report done for Appellants referenced an easement for an existing waterway through the premises.[1] Such waterway was to be realigned as shown on a subdivision plan prepared by the developer of Appellants' Property and other surrounding properties. The subdivision plan shows a twenty-three foot wide easement planned for the development through Appellants property.[2] Appellants did not review their deed or check to determine whether the developer had recorded the easement. At present, there has been no realignment and there is no known written or recorded easement.
The waterway, at the time of Appellants' purchase, was approximately six feet wide and three feet deep. Currently, the waterway does not exceed twelve to fourteen feet in width at any point. In 1979, Appellants built a bridge across the waterway. In 1990, due to widening of the watercourse by water flow they built another larger bridge. In 2003, Appellants found that they needed to build a third, yet larger, bridge and began investigating the source of the water due to the significant erosion since their purchase of the property in 1979. Appellants learned that a storm water management system had been constructed prior to 1973 along Coopertown Road. The system consisted of 6 or 7 inlets spaced at distances which collected storm water from a wide area and transferred it through underground pipes that emptied into a watercourse that passed onto the waterway.
In 1973, a developer submitted a subdivision plan to Radnor Township. For approval of the subdivision plan, Radnor Township required the developer to extend the outlet of the storm water system approximately 100 feet from Coopertown Road and to construct an energy dissipater to reduce the velocity of the water. The developer built the dissipater. The dissipater emptied water above ground from a fifteen inch pipe which was approximately fifty feet upstream from Appellants' property. The dissipater has changed through *1166 the years. Riprap rocks are missing, several more pipes now discharge into the dissipater and the upstream neighbor put in a poured concrete pad near the dissipater.
In 1984 or 1985, Appellants noticed increased erosion and it was during this time that Appellants' neighbors upstream constructed a cyclone fence and an in-ground swimming pool.[3] The trial court noted that Appellants have not joined the upstream neighbor in this action and have not asked the upstream neighbor to restore the dissipater to its original condition or to remove the twenty foot pipe which channels water into the waterway and toward Appellants' property.
On April 15, 2005, Appellants filed an action against Appellees in this court's original jurisdiction seeking injunctive and declaratory relief and either restoration of the drainage easement to its 1979 state or diversion of the runoff. Appellants alleged that Appellees had drained excessive amounts of water through a drainage waterway that runs through their backyard, resulting in erosion, high water velocities, caving of stream banks and bridge collapses, resulting in a nuisance on the property. Appellants then filed an amended petition for review which included, along with the first private nuisance count, a second count for violation of the Storm Water Management Act.[4] The Department filed preliminary objections to the amended petition for review and cross-claims were filed by the remaining Appellees. Our court dismissed the second count, determining that liability under the law cannot be asserted against the State or its agencies. However, we transferred the nuisance count to the trial court due to our lack of jurisdiction in the matter. Swift v. Department of Transportation (No. 194 M.D.2005, filed September 6, 2005).
Thereafter, on April 18, 2006, the trial court denied the Department's preliminary objections without an opinion. The Department subsequently filed an answer and a non-jury trial was held in June of 2006. Appellants presented the expert testimony of Richard Nalbandian (Nalbandian), a geologist. Nalbandian testified that the erosion on Appellants' property was primarily caused by the discharge from an eighteen inch diameter pipe on the upstream neighbor's property which discharges the storm drains from the Coopertown Road inlets. Nalbandian assessed the contributions of water from each Appellee by determining the amount of impervious coverage each Appellee had on its roads. Nalbandian found that Haverford Township had approximately .45 acres of impervious coverage, Radnor Township had approximately .24 acres, the Department had approximately 1.93 acres, and Haverford School District had approximately 2.43 acres of impervious coverage. Nalbandian stated that the increase in the discharge of water into the waterway was caused by increased rainfall and/or increased impervious coverage in the watershed. Nalbandian did not review the Appellees' records to determine whether there had been any increase in the impervious coverage since 1979. Nalbandian did not know how much water was discharged in 1979.
*1167 The Department presented expert witness, Rebecca Burns (Burns), a professional engineer. Burns testified that there was a twenty-three foot wide waterway design shown on the subdivision plan. She further stated that the erosion of Appellants' property was caused by a combination of very high precipitation events in 2003 and 2004, obstruction of the cyclone fence installed by the upstream neighbor and highly erodible soil. Burns also stated that the erosion near the Appellants' bridge was caused by Appellants' failure to protect against scour through rock riprap or larger size rocks and their having the bridge pier in the water.
The Department also presented evidence that it has not altered Coopertown Road nor has it increased the amount of impervious surface on Coopertown Road since 1970. The only alteration was a milling and resurfacing project in 1999, during which a portion of the pavement was cut down and resurfaced to restore the cross-section of the roadway and corrugated metal pipe was replaced with thermal plastic pipe.
Haverford School District presented the expert testimony of Kevin Momence (Momence), who testified that the School District constructed an addition in 1991 but that the addition did not increase the amount of water discharged into the waterway. Momence stated that he designed the infiltration bed at the school to reduce water flow, going in the opposite direction of the Appellants' property. Momence testified that the amount of storm water directed towards Appellants' property is virtually the same as it was in 1990.
On October 4, 2006, the trial court denied Appellants' claims concluding that the Appellants failed to meet their burden of proving a private nuisance claim. Additionally, the trial court found the Department immune from equitable claims seeking affirmative action. On December 5, 2006, the trial court denied Appellants' post-trial motions and judgment was entered December 7, 2006. Appellants now appeal to this court.[5]
Appellants contend that the trial court erred in refusing to rule on their claims for injunctive and declaratory relief and instead treating the action as one for damages for which it found no relief was available under 42 Pa.C.S. § 8542(b)(6); in holding that the Department had immunity from suit pursuant to 1 Pa.C.S. § 2310 and 42 Pa.C.S. § 8522(b) when the amended complaint sought only declaratory and injunctive relief, and prohibitory injunctive relief was available; in failing to conclude that Appellees caused a private nuisance; in finding the Department's drainage right-of-way was twenty-three feet wide across Appellants' property when this was not an issue to be tried, in admitting expert evidence on this point and finding *1168 that there was competent evidence to support this finding; in qualifying the Department's in-house litigation support advisor as an expert witness in multiple and far ranging professional fields; and in denying Appellants' motion for a new trial. Appellants further contend that Appellees' counsel committed professional misconduct by requesting the trial court make findings that were knowingly false.
Initially, we will address Appellants' contention that the trial court erred in refusing to rule on their claims for injunctive and declaratory relief and instead treating the action as one for damages for which it found no relief was available under 42 Pa. C.S. § 8542(b)(6) and that the trial court erred in holding that the Department had immunity from suit pursuant to 1 Pa.C.S. § 2310 and 42 Pa. C.S. § 8522(b) when the amended complaint sought only declaratory and injunctive relief and prohibitory injunctive relief was available.[6]
In their amended petition for review, Appellants requested the following relief:
[A]n order requiring Defendants to abate the nuisance by restoring and repairing the Property and drainage easement to its condition in January 1979, and for an order that Defendants are under a duty to maintain the drainage easement in its January 1979 condition. In the alternative, Plaintiffs demand an order permanently diverting water from the drainage easement and Plaintiffs' Property.
Appellants' Amended Petition for Review, June 3, 2005, at 5. All of these requests require an affirmative action by the Appellees. With regard to Appellants' request for affirmative action by the Department, we must address the issue of sovereign immunity. 1 Pa.C.S. § 2310 provides in pertinent part as follows:
Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. . . .
The General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief. Bonsavage v. Borough of Warrior Run, 676 A.2d 1330 (Pa.Cmwlth.1996). Appellants in seeking to have Appellees restore the waterway to its 1979 condition or in the alternative, to divert the water from their property, were asking for an affirmative action.[7] As such, the trial court was correct in determining that the Department would be immune from suit unless the claim fell within one of the exceptions to immunity that are set forth in Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522. Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522, provides in pertinent part as follows:

*1169 (a) Liability imposed.the General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instance set forth in subsection (b) only and only to the extent set forth in this subchapter . . . sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.
(b) Acts which may impose liability. The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
* * *
(4) Commonwealth real estate, highways and sidewalks.A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).
The Appellants contend that as they were not asking for damages, this section does not apply. However, the trial court, while acknowledging that this action was not a direct claim for damages, addressed this matter to point out that the Appellees are immune from suit inasmuch as Appellants have requested them to perform the affirmative action of returning the watercourse to its 1979 condition which would require the expenditure of an amount of funds equal to damages. Thus, Appellants only action here, if granted by the court, would be equivalent to an action for damages arising out of a negligence action The fact that the court then raised and disposed of the reasons for which a negligence action did not lie does not mean that the trial court erred by explaining why it could not fashion the remedy requested by Appellants as it addressed this issue and in finding that the Appellees were immune from this suit seeking to compel affirmative action by the Appellants.
Further, Appellants request for declaratory relief had no effect and served only as a legal predicate for a damages or other immunity-barred claim in this same action. Appellants requested a declaration that "Defendants are under a duty to maintain the drainage easement in its January 1979 condition." As the trial court determined that the Department was immune from suit seeking to have it "restore and repair the Property and drainage easement to its condition in January 1979", the Appellants' demand for declaratory relief must fall along with the claim it serves to support. Stackhouse v. Commonwealth, 892 A.2d 54, 62 (Pa.Cmwlth.2006)(declaratory action must fall as holding otherwise would frustrate the purpose of sovereign immunity to insulate state agencies from suit).
Appellants also contend that the trial court erred in failing to conclude that Appellees caused a private nuisance. Section 822 of the Restatement (Second) of Torts sets forth the test to determine the existence of a private nuisance:
§ 822. General Rule
One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
(a) intentional and unreasonable, or

*1170 (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
Appellants contend that the increase in the amount of rainfall increases the runoff from the Appellees into the waterway on Appellants' property. The trial court determined that Appellants failed to establish that any of the Appellees caused an increase in the flow of water in the waterway. A review of the record supports such a finding. The primary cause of the erosion of the property was the eighteen inch pipe on the upstream neighbor's property according to Appellant's own expert, Nalbandian. Although he also attributed contributions of water from each Appellee because of a certain amount of impervious coverage from their roads, he did not know whether those figures represented any increase from the impervious coverage in 1979. Further, he did not know enough about the amount of water discharged in 1979 to determine whether there had been an actual increase at present. As there is insufficient evidence to support a causal connection between Appellees and an increase in flow of water in the waterway, the trial court was correct in determining that Appellants failed to sustain their burden of proof on the private nuisance claim.
Next, Appellants contend that the trial court erred in finding the Department's drainage right-of-way was twenty-three feet wide across Appellants' property when this was not an issue to be tried, in admitting expert evidence on this point and finding that there was competent evidence to support this finding and in qualifying the Department's in-house litigation support advisor as an expert witness in multiple and far ranging professional fields.
The Department presented the expert witness testimony of Rebecca S. Burns, a professional engineer as well as an attorney, who works as a staff engineer for the Office of Chief Counsel with the Department. Ms. Burns testified that she has worked as a civil engineer and, among other things, has designed roadway drainage systems, done channel relocation for Lycoming Creek, performed hydrologic and hydraulic studies for bridges and hydraulic computations for cross pipes and storm water management systems. The Department moved to have Ms. Burns qualified as an expert witness in the areas of engineering, hydraulics and hydrology, storm water design, and bridge design and safety. Appellants' attorney objected to her qualifications in the area of hydrology and argued that her storm water design skill was limited to designing systems, not repair and maintenance of them. The trial court noted the objection and permitted Ms. Burns' testimony. Notes of Testimony, June 29, 2006, at 286-305.
A review of Ms. Burns' qualifications reveals that she is competent to testify as a civil engineer with emphasis on hydrology and hydraulics, storm water design and bridge safety and design. A witness is properly qualified as an expert when he or she "has any reasonable pretension to specialized knowledge on the subject under investigation." Miller v. Brass Rail Tavern, Inc., 541 Pa. 474, 480, 664 A.2d 525, 528 (1995). Whether a witness is qualified to testify as an expert is within the trial court's discretion and we will not reverse unless there is a clear abuse of discretion. Commonwealth v. Brown, 544 Pa. 406, 676 A.2d 1178 (1996). The trial court found Ms. Burns was qualified to testify as an expert witness for the Department. Once qualified, an expert witness may testify on broad topics and specialties within their field. Kuisis v. Baldwin-Lima-Hamilton Corp., 457 Pa. 321, 319 A.2d 914 (1974). Ms. Burns' testimony *1171 was not beyond her field. Her employment by the Department does not render her incompetent as an expert, but goes to her credibility and the weight of the evidence, a judgment entrusted to the trier of fact and not to this Court. The trial court was correct in allowing and relying upon Ms. Burns' testimony.
Further, the trial court did not err in making a finding of fact that "[o]n the subdivision plan prepared by Yerkes & Associates, a 23-foot wide easement was planned for the development, in which Plaintiff's property was located." Trial Court Opinion, February 12, 2007, Finding of Fact No. 8, at 2. Ms. Burns testified regarding the drainage right-of-way, stating that a 23-foot wide easement was planned across Appellants' property. Appellants contend that the trial court erred in making this finding because this was not an issue to be tried and the subdivision map does not create an easement. Appellants are correct that a subdivision map does not create an easement. However, the trial court did not find that there was a 23-foot wide easement; it only found that one had been planned and was available to the Appellants at the time they purchased the Property.
Appellants further contend that the map Ms. Burns relied upon was not drawn to scale. The map sets forth the drawing of Appellants' property along with the waterway, and also provides a table that indicates that the waterway was to be 23 feet wide. Thus, the fact that the drawing sets forth that it is not to scale is irrelevant, because the table sets forth the actual dimensions planned. A builder would only rely upon illustrations as an accessory to the size specifications which were also written on the plan. Also, Ms. Burns, as an engineer and expert witness, is permitted to comment on findings she believes are relevant. The size of the proposed easement could have been relevant to this case, as it gives the trial court some background information on the area in question. The trial court is free to permit and consider any statement made by an expert witness that is supported by evidence. However, accepting a statement as fact does not make it "an issue to be tried." Appellants' Brief at 3. The facts set forth by the trial court are merely a summary of statements that were set forth before the trial court. The trial court did not err in making this finding of fact and accepting the expert testimony of Ms. Burns.
Finally, Appellants contend that Radnor Township's counsel committed professional misconduct by requesting the trial court to make findings that were knowingly false. Specifically, Appellants contend that David Blake, counsel for Radnor Township, proffered and refused to withdraw a proposed finding while knowing it to be false. Blake submitted to the trial court what became the trial court's finding of fact no. 6: "Plaintiffs' were aware of at least the title report and they agree that the property was bought subject to an easement. Plaintiffs did not review their deed, nor check to determine whether the developer had recorded the easement." Trial Court Opinion, F.F. No. 6 at 2. Appellants argue that this is contrary to the testimony of Robert Swift who testified that he consulted both his original title report and that of his neighbor and that all counsel, including Blake, received a letter from Appellants dated October 12, 2005, which attached information from Appellants' new title search for an easement. Appellants state that this shows the mistaken findings of the trial court along with the violation of Rule 3.3(a) of the Rules of Professional Conduct, as Blake made a knowingly false statement to the court which prejudiced Appellants.
*1172 Radnor Township responds to this allegation stating that it is "egregious and patently wrong." Radnor Township Brief at 19. Radnor Township first states that the exhibit Appellants rely upon was not part of the trial exhibits which Mr. Swift claims he sent to all counsel. What was of record was a title report from Title Insurance Corporation of Pennsylvania and the testimony of Mr. Swift wherein he acknowledged receipt of the title report prior to purchasing the property and that there was an indication as to "privilege and easement created" as in deed book 613, page 219. Mr. Swift initially indicated that he did not know whether he actually checked the deed book indicating simply that he sent it to the title company to have it searched but that he never saw any documentation to support the existence of an actual written easement agreement. Radnor Township's proposed findings of fact, which are alleged to be knowingly false, indicate the following:
9. At no time prior to initiating suit or during the course of the Trial did the plaintiffs check deed book 613, pg. 210 which is referenced as Section 8 on the title report as being where the privilege and easement was recorded. (NT pg. 67, 6/29/06). Additionally, neither of the plaintiffs produced the deed to their property which, had it been produced, would likely have referenced that same easement. (NT pg. 101, 6/29/06).
* * *
15. Despite being aware of the existence of the watercourse and its having been identified as "easement of existing waterway" on the commitment to ensure title, despite recognizing and agreeing that plaintiffs acquired the property subject to the easement, plaintiffs found no written easement to present to this Honorable Court. (NT pgs. 10, 35-36, 46, 49 (6/29/06)).
Radnor Township's Post-trial Proposed Findings of Fact and Conclusions of Law, September 8, 2006, at 2-3. In Radnor Township's proposed conclusions of law, it is indicated in paragraph 3 that "[t]he Title Report provided to the plaintiffs at the time of the closing on their acquisition of the property indicated and (sic) "easement of existing waterway through premises to be realigned as shown on plan" and "privilege and easement created as in deed book 613 page 210."" Id. at 12. Radnor Township contends that the Appellants failed to produce that written easement and privilege document that is referenced in the title report and thus, offered no evidence of there being a formal written document outlining responsibilities for use and maintenance of the identified easement. The record reflects that Mr. Swift did not actually examine his deed and that he had no recollection of examining the deed book referenced in the title search regarding the easement. Further, Mr. Swift's deed, as well as the easement agreement, was never offered into evidence before the trial court. Thus, Radnor Township did not offer any evidence or information that was knowingly false. In any event, there is no indication that the decision of the trial court was based upon any part of the proposed findings of fact in question which is alleged to be false.
Finally, Appellants request we vacate the trial court's order and grant them a new trial. A review of the record reveals that the trial court did not err in determining that Appellants failed to prove that they have a clear right to the relief requested. The trial court was correct in denying Appellants' motion for a new trial.
Accordingly, we affirm the decision of the trial court.

ORDER
AND NOW, this 7th day of December, 2007 the Order of the Court of Common *1173 Pleas of Delaware County in the above-captioned matter is affirmed.
NOTES
[1] The title search report provided in part as follows:

OTHER EXCEPTIONS:
* * *
7. Easement of existing waterway thru premises to be realigned as shown on plan.
8. Privilege and easement created as in Deed Book 613 page 210.
Title Report, November 24, 1978, at 1.
[2] The Blair Subdivision Plan (Plan) was labeled Plaintiffs' Exhibit 2. On the right side of the Plan is a drawing of the "Typical Grass Waterway Section" showing a width as "T=23'.0"" and the words "SEE DESIGN DATA." Below that it states "NOT TO SCALE!" and then "GRASS WATERWAY DESIGN DATA" and "T=23' TOP WIDTH". On the left side of the Plan there is a drawing which shows the location of the planned energy dissipater above Appellants' property with a channel below it that runs through Appellants' property within which channel is an arrow pointing in the direction of Appellants' property. A note points to the channel and states "PROPOSED REALIGNMENT OF WATERWAY SEE TYP. SECT", obviously referring to the "Typical Grass Waterway Section" which contains the layout and design data of the typical waterway section on the Plan.
[3] The upstream neighbors also installed plastic pipes that exit into the area near the energy dissipater located on their property and an additional pipe that is open ended on both sides, is approximately twenty feet long and fifteen to twenty inches wide, which channels water under an earthen walkway. Water from these pipes also discharge into the waterway and down towards Appellants' property.
[4] Act of October 4, 1978, P.L. 864, as amended, 32 Pa.C.S. §§ 680.1-680.17.
[5] Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed. Commonwealth v. Decker, 698 A.2d 99 (Pa.Super.1997), petition for allowance of appeal denied, 550 Pa. 698, 705 A.2d 1304 (1998). In reviewing this matter, our court may not reweigh the evidence and substitute our judgment for that of the fact-finder. Commonwealth v. Vetrini, 734 A.2d 404 (Pa.Super.1999). A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. Commonwealth v. Weston, 561 Pa. 199, 749 A.2d 458 (2000). The standard of review regarding the sufficiency of the evidence is whether the evidence admitted before the trial court and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict winner, is sufficient to support all of the elements of the offense beyond a reasonable doubt. Commonwealth v. DeJesus, 567 Pa. 415, 787 A.2d 394 (2001), cert. denied, 537 U.S. 1028, 123 S.Ct. 580, 154 L.Ed.2d 441 (2002).
[6] We note that on appeal before our court, Appellants contend that only the Department is not immune from suit. There is nothing in Appellants' brief to suggest that the other Appellees were to be included in this contention until Appellants filed their reply brief. In its reply brief, Appellants admit that Haverford, Radnor and the School District enjoy qualified immunity from actions for damages, but argue that they have no immunity from actions for injunctive relief.
[7] The remaining Appellees are also immune from suit in this case, as Appellants' claim seeks to require affirmative actions by Appellees and does not merely seek to restrain them from performing an action. See Bonsavage.