# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janice E. Falini,                          :
                                           :
                    Appellant              :
                                           :
          v.                               :    No. 676 C.D. 2015
                                           :
Brinton Square Condominium                 :    Submitted:  September 18, 2015
Association                                :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                  **FILED:  February 1, 2016**

Janice E. Falini appeals from the order of the Court of Common Pleas of Chester County (trial court) denying Falini's post-trial motion to the trial court's merits decision (Decision) that found, in relevant part, that the Brinton Square Condominium Association (Association) and its Executive Board (Board) did not breach their fiduciary duties and denied Falini's request for consequential and punitive damages.[1]  On appeal, Falini raises numerous issues regarding how the trial court erred by not awarding all of Falini's requested damages based, *inter alia*, on the Association's and the Board's willful violation of their duties and

---

[1] The trial court found in Falini's favor on her breach of contract claim and directed the Association to pay her $8,326.85 to repair damages to her property.

obligations under the Uniform Condominium Act[2] (Act) and the Association's Declaration. Also before the Court is the Association's Petition to Quash Falini's appeal (Petition), in which the Association asserts that Falini has waived all of her issues for appellate consideration because she has appealed from the wrong order of the trial court. For the following reasons, we deny the Petition and affirm.

## I.      Background

Falini owns a condominium unit (unit) in Brinton Square. The Association is responsible for the maintenance and repair of common elements within Brinton Square. In early 2005, as part of a larger roofing project, the Association had the roof over Falini's unit replaced. This project included, among other things, "the replacement and installation of new plywood, underlayment and shingles directly over Falini's unit." (Decision at 1.) Falini began noticing a leak developing in the spare bedroom on her third floor in 2008, which she reported to the Association's managing agent (Former Manager). In 2009 and 2010, Falini reported more leaks, including in her dining room and around her skylights, to the Association. The Association sent a contractor to investigate the leaks in late 2009 or early 2010. Falini hired her own contractor in June 2010 to determine the source of the leaks. After cutting a hole in the ceiling of the third-floor spare bedroom, the contractor determined "that the vent pipe which exited through the roof was either bent or had come loose from the vent strap which would have been attached to the plywood making up the roof." (Decision at 2.) The contractor further concluded, after cutting a hole in the drywall above the dining room windows, that the source of

_____

[2] 68 Pa. C.S. §§ 3101-3414.

2

that leak was the small roof overhanging the windows. Falini continued to request to the Association's Former Manager that the Association fix the leaks.

In 2011, the Association had another contractor investigate Falini's water leaks, and, in November 2011, that contractor observed "that the water leaks . . . were as a result, in part, of improper flashing installation during the roof repairs." (Decision at 2.) Falini pressed the Association to resolve the issues and now asked that the Association fix, at its own expense, the leaks and the interior of her unit, repaint the walls, and test for mold. The Association responded by placing a tarp over Falini's roof, which by 2013, became torn and damaged. In June 2014, the Association retained a roofing contractor to repair Falini's roof, which included re-flashing the vent pipe, repairing the small roof over the dining room windows and around the skylights. No further leaks have occurred since the repair.

Falini filed an amended complaint (Amended Complaint) on January 30, 2014.[3] Count I asserted that the Association breached its contract to properly maintain, repair, modify or replace the common elements, including Falini's roof. She sought actual and non-liquidated damages that were allegedly caused to her unit by water infiltration from the roof. In Count II, Falini alleged the Board breached its fiduciary duty to act in good faith and due diligence under Section 3303(a) of the Act.[4] Falini contends the Board was aware of the damages to her unit caused by the water infiltration, which was the result of the deficiencies in the

---

[3] Falini filed her first complaint on October 8, 2012, and she was granted leave to file the Amended Complaint on January 10, 2014.

[4] 68 Pa. C.S. § 3303(a).

3

roof, a common element owned by the Association, but ignored its obligations to repair the same under the Act. Count III asserted that the water infiltrations constituted a continuing trespass of Falini's unit. Count IV claimed that punitive damages under Section 3412 of the Act[5] were warranted due to the Association's willfully breaching its fiduciary duties owed to Falini to, *inter alia*, maintain the common elements, a violation of the Act and the Association's Declaration.

The Association denied liability on several grounds, including that the water infiltration was not caused by a "common element[] . . . which it [was] required to maintain" but by problems with a vent pipe strap that was Falini's responsibility. (Answer ¶ 13, R.R. at 104a.) It further asserted that Falini did not timely report the leaks to the Association and, therefore, "missed the warranty period on the roof installed by the Association." (Answer ¶ 14, R.R. at 104a-05a.) According to the Association, it consistently advised Falini "that she was required to repair and maintain those portions of her unit that were not the responsibility of the Association," "failed to do so to her detriment," and did not make any efforts to "mitigate any of her claimed damages in this litigation." (Answer ¶¶ 15, 34, R.R. at 105a, 107a.) In its new matter, the Association asserted, *inter alia*, that Falini's claims were barred by a variety of legal defenses, the damage was caused by her own actions, and she failed to mitigate her damages by not performing the necessary repairs to stop any water infiltration from continuing.

---

[5] 68 Pa. C.S. § 3412.

4

## II.     Proceedings before the Trial Court

After more than two years of discovery, numerous motions filed by both parties, and trial delays, a non-jury trial was held on September 15-16, 2014. Testifying at trial were Falini, on her own behalf, the Association's current managing agent,[6] and three expert witnesses regarding the costs of the needed repairs to the unit. She also presented numerous exhibits allegedly documenting the damages, both actual and consequential, sustained as a result of the Association's actions. Two of the three Board Members testified, and the Association presented its own documentary evidence to support its defense.

On September 23, 2014, the trial court issued its Decision on Falini's claims. The trial court found that Falini had stated a cause of action against the Association based on the damage to her unit caused by the leaks in the roof, a common element, and that the Association was responsible for the repair of that damage but did not do so after being placed on notice of the roof leaks in 2010 and again in 2012. Thus, the trial court awarded Falini $4,275 to repair the drywall and repaint her unit and $4,051.85 to remediate the mold caused by the water leaks.[7]

However, the trial court declined to award non-liquidated damages based on Falini's alleged "loss of enjoyment and/or use of her home and attorney's fees." (Decision at 3.) It noted that Falini's attempts to prove her loss of enjoyment/use of her home were "a lengthy and somewhat tortured explanation as to how she

---

[6] The Association's Former Manager did not testify at the hearing.

[7] The Association fixed the roof in June 2014 prior to the September 2014 bench trial.

calculated the increase in her electric bills and thus, the inability to enjoy her home for a period of time." (Decision at 3-4.) The trial court concluded that, while incidental costs may be recoverable, such costs "are dependent upon the nature of the property damage," and Falini's "calculations of loss or use of enjoyment are speculative and tenuous at best." (Decision at 6.) The trial court observed "that Falini never left the property to move into a hotel or a motel" and that she "continued to use . . . the third floor spare bedroom throughout the entire time." (Decision at 6.) Noting that Falini had the burden to prove damages by a preponderance of the evidence, the trial court held that she did not prove the causal connection between her higher heating and cooling bills and the leaking roof.

Falini also sought approximately $35,000 in attorney's fees, as punitive damages, based on the Board having breached its fiduciary duty to her.[8] The trial court rejected this claim, reasoning that between 2008 and 2010, when the leaks first appeared and continued, "Falini corresponded with [the Association's] managing agent," although "many months would go by between contacts." (Decision at 7.) However, she "never contacted any of the Board members" or attended a Board meeting because "she assumed everything was, or would be, handled." (Decision at 7.) The trial court observed that, despite knowing about the loose/broken vent strap, Falini never fixed the problem. The trial court concluded that

> [t]he Board, through its agent, kept in contact with Falini. The Board sent out inspectors to try to determine the source of the leak.

[8] This was calculated at a rate of $100 per hour, although Falini's testimony was that her attorneys ordinarily charged $200 per hour. The trial court noted that there was little testimony regarding how much of the $35,000 Falini had actually paid.

6

> The Board presented Falini with estimates of repair. The Board assumed that Falini had followed through with the repair. Falini assumed that the Board would be coming out to make the repairs. There was nothing here other than a lack of urgency on behalf of both parties. At worst, far too many assumptions were made by both parties. There was nothing presented by way of testimony that would allow a conclusion that the Board breached a fiduciary duty.

(Trial Ct. Op. at 7.)

Falini filed a motion for post-trial relief, asserting, *inter alia*, that the trial court erred in not finding that the Association breached its fiduciary duties and obligation to act in good faith because the trial court had found that the Association had not maintained the common elements as required by the Act and the Declaration. Similarly, she asserted that the trial court should have found that the Association "willfully and knowingly failed to promptly repair a common element" and, therefore, was subject to legal fees and punitive damages. (Motion for Post-Trial Relief ¶ 19, R.R. at 239a.) Falini further claimed that the trial court erred in concluding that her evidence regarding the loss of the use of her unit was speculative and that she should have made repairs to the roof. After considering the briefs filed by the parties and holding oral argument, the trial court denied the post-trial motion on December 17, 2014. Falini filed a notice of appeal to the Superior Court on January 15, 2015,[9] and judgment on the trial court's December 17, 2014 order was entered on February 20, 2015.

The trial court directed Falini to submit a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure

---

[9] This matter was transferred to our Court on March 6, 2015.

7

1925(b) (1925(b) Statement). The 1925(b) Statement, like the post-trial motion, raised numerous bases for the trial court having erred, including by: not awarding punitive damages; not finding that the Association violated its obligation of good faith under Section 3112 of the Act[10] and/or breached its fiduciary duties under Section 3303(a) of the Act; finding that Falini failed to mitigate her damages; and finding that Falini had not proven her claim for loss of use and enjoyment of the unit.[11]

In its 1925(a) opinion, the trial court initially noted that the 1925(b) Statement was five pages long and contained forty issues, placing Falini in danger of having all of her issues waived pursuant to Kanter v. Epstein, 866 A.2d 394, 401 (Pa. Super. 2004) (appellants who raised over 100 issues in their 1925(b) statements waived all of them). (1925(a) Op. at 1.) The trial court concluded that the issues were addressed in its Decision and, therefore, relied on that opinion. This matter is now before this Court.[12] However, before we address the merits of

---

[10] 68 Pa. C.S. § 3112.

[11] Falini further asserted errors and/or abuses of discretion based on certain comments made by the trial court "at oral argument." (1925(b) Statement ¶¶ 8-10, R.R. at 316a-17a.)

[12] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." Swift v. Department of Transportation, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007). The trial court acts as the fact-finder at a bench trial, and "is free to believe all, part or none of the evidence and to determine the credibility of the witnesses." Samuel-Bassett v. Kia Motors America, Inc., 34 A.3d 1, 39 (Pa. 2011) (internal quotation omitted). "[O]ur court may not reweigh the evidence and substitute our judgment for that of the fact-finder." Swift, 937 A.2d at 1167 n.5. However, "[a] challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review," and we consider "whether the evidence admitted before the trial court and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict winner, is sufficient to support all of the elements of the offense." Id.

Falini's appeal, we first consider whether to quash the appeal based on the Association's Petition.

### III. Petition

In the Petition, the Association asserts that Falini's appeal should be quashed because she has waived all of her issues where her notice of appeal refers to the trial court's December 17, 2014 order denying Falini's post-trial motion and not to the trial court's September 23, 2014 decision on the merits. According to the Association, implicit in Pennsylvania Rule of Appellate Procedure 904, Pa. R.A.P. 904 (setting forth the contents of a notice of appeal), is the requirement that the notice of appeal contain the correct date of the order appealed. The Association argues that the trial court's order denying the post-trial motion was interlocutory and not immediately appealable under Pennsylvania Rule of Appellate Procedure 301, Pa. R.A.P. 301, and Falini can no longer file a timely appeal from the September 23, 2014 decision.

Falini acknowledges that she appealed the trial court's December 17, 2014 order denying her post-trial motion, but asserts, *inter alia*, that, pursuant to Pennsylvania Rule of Appellate Procedure 905(a), "Pa. R.A.P. 905(a), [her] appeal was perfected when the final judgment was entered on the lower court's docket on February 20, 2015." (Falini's Answer to the Petition ¶ 7.) She argues that she has preserved all of her issues because "when an appeal is taken from an order denying post[-]trial relief, the appellate courts address the merits of the appeal subsequent to final judgments being entered. Johnston the Florist, Inc. v. TEDCO

Construction Corp[oration], 657 A.2d 511 ([Pa. Super.] 1995)." (Falini's Answer to the Petition ¶ 20.)

It is well-settled that "[i]t is the order of the trial court disposing of a motion for post-trial relief that has been reduced to judgment which comprises the final order in the case from which an appeal must be filed within thirty days." McCormick v. Northeastern Bank of Pennsylvania, 561 A.2d 328, 330 (Pa. 1989). See also K.H. v. J.R., 826 A.2d 863, 871 (Pa. 2003) ("Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment."). Rule 905(a)(5) provides that "[a] notice of appeal filed after the announcement of a determination but before entry of an appealable order[, i.e., a judgment,] shall be treated as filed after such entry and on the day thereof." Pa. R.A.P. 905(a)(5). Here, Falini filed a post-trial motion to the trial court's September 23, 2014 decision in her civil case against the Association.[13] The trial court denied post-trial relief in its December 17, 2014 order, from which Falini filed a notice of appeal. Although the trial court issued its order on December 17, 2014, it was not until that order was reduced to judgment and entered onto the docket on February 20, 2015 that it became a final order subject to appeal. McCormick, 561 A.2d at 330. Pursuant to Rule 905(a)(5), Falini's notice of appeal

---

[13] Because this matter involved a bench trial at which evidence was presented, thereby requiring the trial court to make findings of fact and conclusions of law based on that evidence, Falini was required, by Pennsylvania Rule of Civil Procedure No. 227.1(c), Pa. R.C.P. No. 227.1(c), to file post-trial motions in order to preserve her issues for subsequent appellate review. The Arches Condominium Association v. Robinson, __ A.3d __, __ n.4 (Pa. Cmwlth., No. 361 C.D. 2015, filed December 29, 2015), slip op. at 6 n.4. The filing of post-trial motions tolls the time for filing an appeal from the underlying decision on the merits. Shapiro v. Center Township, Butler County, 632 A.2d 994, 999 n.12 (Pa. Cmwlth. 1993).

is treated as having been filed on the day the final order was entered, February 20, 2015, and not from an interlocutory order. Pa. R.A.P. 905(a).

Moreover, "a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment." K.H., 826 A.2d at 871. The trial court's September 23, 2014 Decision on the merits, which followed the bench trial, was not a final judgment from which an immediate appeal could be filed. See Pennsylvania Rule of Civil Procedure No. 1038(b) & *Note*, Pa. R.C.P. No. 1038(b) & *Note* (indicating that, following a bench trial, "[t]he decision of the trial judge may consist only of general findings as to all parties but shall dispose of all claims for relief" and that "[a] decision is not a final decree, also known as a judgment"); Pa. R.A.P. 301 (requiring an appeal be taken from a final order). Where a post-trial motion is filed with a court "there is no final appealable order until the court disposes of the post-trial motion." Shapiro v. Center Township, Butler County, 632 A.2d 994, 999 n.12 (Pa. Cmwlth. 1993). Thus, Falini's appeal of the order denying post-trial relief, which became final on February 20, 2015, "will be viewed as drawing into question any prior non-final orders," including the Decision on the merits, because it "produced the judgment." K.H., 826 A.2d at 871. Accordingly, Falini did not waive any issues, and we deny the Petition.

## IV.    Merits

Falini raises eleven issues in her brief, which we have consolidated into the following questions. Whether the trial court erred when it: (1) held that punitive damages were not warranted because the Board and/or the Association did not violate their fiduciary duties or obligation to act in good faith or otherwise willfully

11

violate the Act and the Association's Declaration; and (2) found that other damages were not warranted due to Falini's failure to present non-speculative evidence regarding her claim for loss of use and/or enjoyment of the unit and to mitigate those damages.[14]

> *A. Did the trial court err by not finding that the Board and/or the Association breached their fiduciary duties or obligations to act in good faith or otherwise willfully violate the Act or Declaration so as to justify an award of punitive damages?*

Citing Sections 3303(a) and 3112 of the Act, Falini argues that "the Board is required to perform their [sic] duties, in good faith and in a manner 'they [sic] reasonably believe to be in the best interests of [the Association] and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.'" (Falini's Br. at 21 (quoting 68 Pa. C.S. § 3303(a)).) Falini asserts that the Association also has the duty to maintain, repair and replace the common elements in a timely manner as required by Section 3307(a) of the Act,[15] but did not do so. Rather, Falini contends, the Association, through its Former Manager, made ongoing representations regarding the repair to the leaking roof over a period of four years, but never followed

---

[14] Falini also argues that the trial court erred in finding that she could not bring a breach of fiduciary duty claim against the Board under the Act and that the Board was not liable because its members are volunteers. Although the Association made these arguments before the trial court and make them now before this Court as alternative bases for affirming, the trial court made no such findings or conclusions. Falini further contends that the trial court erred by not holding the other homeowners in the Association liable for the Board's action and ordering an assessment against those homeowners rather than directing the three Board members to pay the damages themselves. It does not appear from the record that Falini ever requested this relief from the trial court.

[15] 68 Pa. C.S. § 3307(a).

through based on the erroneous belief that the repairs were Falini's responsibility. According to Falini, the failure to timely notify her of the nature of the defects in the roof and repair the roof, and the continued reliance on the Former Manager's opinion, despite her notifying the Board in June and July 2012 of the events that had transpired, demonstrates a lack of good faith and due diligence by the Association and the Board. The Association's egregious actions, Falini argues, demonstrate gross negligence or a willful violation of the Act, as set forth in Section 3412 of the Act and of Section 14.1 of the Association's Declaration, and support the award of punitive damages.[16]

There are several provisions of the Act upon which Falini relies in support of her claim for punitive damages, specifically Sections 3303(a), 3307, 3112, and 3412. Section 3303(a) states, in relevant part:

> (a) **Powers and fiduciary status.--**Except as provided in the declaration, the bylaws, in subsection (b) or other provisions of this subpart, the executive board may act in all instances on behalf of the association. In the performance of their duties, the . . . members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties . . . in good faith in a manner they reasonably believe to be in the best interests of the association and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. . . . In performing his duties, an officer or executive board member shall be entitled to rely in good faith on information, opinions, reports or statements . . . in each case prepared or presented by any of the following:

---

[16] In addition to arguments in opposition to the merits of Falini's appeal, the Association asserts that Falini waived all of her arguments because she failed to state where they were raised or preserved as required by Pennsylvania Rule of Appellate Procedure 2117(c), Pa. R.A.P. 2117(c). It is apparent to this Court that, except as otherwise addressed, the issues Falini raises have been asserted throughout the proceedings in this matter.

13

. . . .

      (2) Counsel, public accountants or other persons as to matters which the officer or executive board member reasonably believes to be within the professional or expert competence of such person.

. . . .

      An officer or executive board member shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted. The executive board and its members shall have no liability for exercising these powers provided they are exercised in good faith, in the best interest of the association and with such care in the manner set forth in this section.

68 Pa. C.S. § 3303(a). Similarly, Section 3112 mandates that "[e]very contract or duty governed by this subpart imposes an obligation of good faith in its performance or enforcement." 68 Pa. C.S. § 3112. Section 3307(a) requires, *inter alia,* that "[e]xcept to the extent provided by the declaration or section 3312(d) (relating to insurance), the association is responsible for maintenance, repair and replacement of the common elements." 68 Pa. C.S. § 3307(a). Section 3412 addresses punitive damages and provides

      If a declarant or any other person subject to this subpart violates any provision thereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief. Punitive damages may be awarded in the case of a willful violation of the subpart.

68 Pa. C.S. § 3412. Falini also cites Section 14.1(e) of the Declaration, which indicates that board members can be held personally liable "in tort to a [u]nit [o]wner . . . for the . . . Board members' own willful misconduct or gross negligence in the performance of their duties." (Section 14.1(e) of the Declaration, R.R. at 78a.)

14

We first address Falini's claims of a willful violation of the Act and/or gross negligence pursuant to Section 14.1(e) of the Declaration. The Act does not define the term willful, but it has been defined as "[v]oluntary and intentional, but not necessarily malicious." Black's Law Dictionary 1737 (9th ed. 2009). Willfulness is defined as "[t]he fact or quality of acting purposely or by design; deliberateness; intention" and "does not necessarily imply malice, but it involves more than just knowledge." Id. As for gross negligence, "there is a substantive difference between ordinary negligence and gross negligence." Ratti v. Wheeling Pittsburgh Steel Corporation, 758 A.2d 695, 703 (Pa. Super. 2000). Gross negligence involves "conduct more egregious than ordinary negligence but does not rise to the level of intentional indifference to the consequences of one's acts." Id. The behavior "must be flagrant, grossly deviating from the ordinary standard of care." Albright v. Abington Memorial Hospital, 696 A.2d 1159, 1164 (Pa. 1997) (internal quotation omitted).

Our review of the trial court's findings and the record reveal that neither supports a finding of a willful violation or gross negligence. The Board, as it is authorized to do under Section 3303(a)(2), relied on the representations of the Association's Former Manager that the issues with Falini's unit were being addressed, and it was not until June and July 2012 that Falini made the Board aware of any problems. There was nothing deliberate or purposeful in the Board's actions (or non-actions) so as to cause further damage to Falini's unit, and there is nothing in the record to suggest that the Association's Former Manager acted with such intent. The trial court aptly characterized this situation as one where the parties did not act with urgency and made too many assumptions as to who was

15

going to do what. Under these circumstances, the trial court did not err in finding nothing flagrant or purposeful about the actions here that would establish a willful violation of the Act or a gross deviation from the ordinary standard of care.

As for Falini's assertions that the Board breached their fiduciary duties or obligations to act in good faith pursuant to the Act, the trial court found that "[t]here was nothing presented by way of testimony that would allow a conclusion that the Board breached a fiduciary duty." (Decision at 7.) Section 3303(a) provides that Board members "shall not be considered to be acting in good faith if he [or she] has knowledge concerning the matter in question that would cause his [or her] reliance to be unwarranted." 68 Pa. C.S. § 3303(a). It is apparent from the record that there was a dispute regarding who was responsible for fixing the leak in Falini's unit. Although Falini testified that the Association's Former Manager gave her assurances that the Association would fix the problem, the trial court did not give much weight to that testimony in determining whether there was a breach of a fiduciary duty. Instead, the trial court found that "[t]he Board sent out inspectors to try to determine the source of the leak. The Board presented Falini with estimates of repair. The Board assumed that Falini had followed through with the repair." (Decision at 7.) The trial court observed that "Falini assumed that the Board would be coming out to make the repairs." (Decision at 7.) The trial court found that Falini never attended a Board meeting and made no efforts to contact the Board to advise it of the leak or her problems with the Association's Former Manager between 2008 and 2010. (Decision at 7.) The Board Members' testimony supports the trial judge's findings. They stated that they were told by the Association's Former Manager that Falini, not the Association, was responsible

16

for the repairs, they believed that the matter was being addressed, and Falini did not advise them of her differing opinion until June and July 2012. (Hr'g Tr. at 125, 132, 140, 143-48, 486-87, R.R. at 453a, 460a, 468a, 471a-76a, 814a-15a.) They further stated that neither they nor the other Board member had any personal issues with Falini or that Falini was treated differently than any other unit owners. (Hr'g Tr. at 129, 489-90, R.R. at 457a, 817a-18a.) We agree that the facts found credible here, where there is no indication that the Board had knowledge that would have rendered its reliance on the Association's Former Manager's representations unwarranted, do not support a finding of a breach of fiduciary duty or a lack of good faith in this matter.

Finally, although the trial court agreed with Falini that the Association had an obligation to repair the common element, the roof, which had caused damage to Falini's unit, the trial court chose to limit its award to the actual damages necessary to remedy that breach. Notably, the Association ultimately did make the necessary repairs to fix the leak, even though it continued to believe that such repairs were Falini's responsibility. We find no error in the trial court's limitation of damages related to the Association's obligation to repair the roof to those actually sustained by Falini as a direct result of the leak.

> *B. Did the trial court err in not awarding damages based on its conclusions that Falini's evidence was speculative and that Falini did not mitigate her damages?*

Falini asserts that the trial court erred in concluding that her evidence on her loss of use and enjoyment claims was speculative and that she was not otherwise entitled to damages because it found that she did not mitigate her damages. Falini

argues that she presented ample evidence to support her claims for the loss of use and enjoyment of her unit. She contends that she was not required to prove these damages with mathematical certainty, only reasonable certainty, and she could rely on probabilities and inferences. Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1258 (Pa. Super. 1983). Falini maintains that the trial court could have made an intelligent estimate on the extent of these damages based on the evidence she presented, but did not do so. Falini further argues that her efforts to mitigate her damages, by covering the floor and placing buckets under the leaks, were reasonable and met the standard for ordinary care and diligence. She asserts that the Association did not demonstrate how any future losses could have been avoided through additional efforts because she could not have made the repairs to the roof, a common element owned by the Association.

The determination of damages is factual and is to be decided by the fact-finder. Delahanty, 464 A.2d at 1257. The plaintiff bears the burden of proving damages by a preponderance of the evidence. Id. "[A]ssessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence." Sehl v. Vista Linen Rental Service, Inc., 763 A.2d 858, 864 (Pa. Super. 2000) (internal quotation omitted). "It is the province of the [fact-finder] to assess the worth of the testimony and to accept or reject the estimates given by the witnesses." Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994). In reviewing these awards, "appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." Delahanty, 464 A.2d at 1257. "Pennsylvania law does not

require proof of damages to a mathematical certainty." Wayne Knorr, Inc. v. Department of Transportation, 973 A.2d 1061, 1081 (Pa. Cmwlth. 2009) (internal quotation omitted). "Rather, evidence of damages may consist of probabilities and inferences as long as the amount is shown with reasonable certainty." A.G. Cullen Construction, Inc. v. State System of Higher Education, 898 A.2d 1145, 1161 (Pa. Cmwlth. 2006). "To prove damages, however, a plaintiff must present sufficient evidence for the fact-finder to make an intelligent estimation, without conjecture, of the amount to be awarded." Id.

We first address Falini's arguments that the trial court abused its discretion in not awarding damages for her loss of use and loss of enjoyment of the unit based on the trial court's rejection of her evidence as tenuous and speculative. Although Falini is correct that she did not have to prove those damages with mathematical precision, Wayne Knorr, Inc., 973 A.2d at 1081, she had to prove that her claimed damages were caused by the leaking roof and convince the trial court to accept her estimates of her damages. The trial court weighed the evidence Falini presented, which consisted of her own calculations, and concluded, as the fact-finder, that this evidence was "speculative and tenuous at best" to establish the causal connection between the leak and Falini's claimed damages. (Decision at 6.) The trial court further observed that Falini still used the rooms as she had used them before and never left her unit to stay in a hotel or motel during this period. (Decision at 6.) These reasons are supported by the record, and, therefore, the trial court's decision denying additional damages was not the "result[ of] partiality, caprice, prejudice, corruption or some other improper influence." Sehl, 763 A.2d at 864. The trial court "assessed the worth of the evidence" and found it to be insufficient to support

19

the damages requested. Kiser, 648 A.2d at 4. We defer to the trial court's determinations, which are supported by the record, and decline to reweigh the evidence as Falini appears to be requesting.

Finally, we consider Falini's assertions that the trial court erred in denying additional damages because she acted reasonably and had no obligation to repair the leak in the roof, a common element, in order to mitigate her damages, and her failure to do so should not have affected her right to recover damages. However, as the Association points out, the trial court did not specifically find that Falini did not mitigate her damages or deny damages on that basis. Rather, it simply observed that "Falini never reattached the loose/broken vent strap," "explained why she did not reattach the vent strap when she was made aware of [the problem] in 2010," or "repaired the roof at her expense." (Decision at 5, 7.) Moreover, in Condominium Association Court of Old Swedes v. Stein-O'Brien, 973 A.2d 475, 483-84 (Pa. Cmwlth. 2009), this Court addressed a similar question regarding consequential damages to a condominium unit as a result of a roof that had leaked for several years. In that case, we indicated that the owner's conduct in not repairing the leak had to be considered in awarding damages, stating "[owner] should have replaced the roof [when it began leaking] and simply sent the bill to the Association. Her five-year delay raises a question as to whether [owner] took reasonable steps to mitigate damages . . . ." Id. at 484. Notably, the owner in Stein-O'Brien "undertook numerous, numerous repairs herself and hired a handyman . . . to make repairs . . . [but the] repairs did not arrest the water problem." Id. at 478 (internal quotation omitted). Falini's efforts here were far less than those taken by the unit owner in Stein-O'Brien, which this Court found to

20

be insufficient. Accordingly, we conclude that the trial court's statements do not require reversing its decision denying damages beyond those awarded. [17]

For the foregoing reasons, we deny the Petition and affirm.

_____
**RENÉE COHN JUBELIRER, Judge**

---

[17] Falini further argues that the trial court was required to liberally administer the remedies pursuant to Section 3113 of the Act and did not do so when it denied her other damages; however, the trial court concluded that Falini did not meet her burden of proving her entitlement to damages beyond those awarded. Thus, no remedies beyond those awarded were warranted.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janice E. Falini,                                    :
                                                     :
                              Appellant              :
                                                     :
                      v.                             :     No. 676 C.D. 2015
                                                     :
Brinton Square Condominium                           :
Association                                          :

# **O R D E R**

   **NOW**, February 1, 2016, the Petition to Quash Appeal filed by Brinton Square Condominium Association is hereby **DENIED**, and the Order of the Court of Common Pleas of Chester County, entered in the above-captioned matter, is hereby **AFFIRMED**.

                              _____
                              **RENÉE COHN JUBELIRER, Judge**